In re the MARRIAGE OF Barbara L. RIETZ and John E. Rietz.

Upon the Petition of Barbara L. Rietz, Appellant,

And Concerning John E. Rietz, Appellee.

No. 96–1189.

Supreme Court of Iowa.

Oct. 21, 1998.

Rod Powell of Powell Law Firm, P.C., Norwalk, for appellant.

Dorothy K. Goodman of Barnhill & Goodman, P.C., West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The question we must answer in this appeal is whether the district court correctly modified a dissolution of marriage decree in reducing the alimony and child support obligations of respondent, John E. Rietz.

We agree with the district court's action and thus vacate a court of appeals decision to the contrary.

## I. Background facts and proceedings.

Barbara L. and John E. Rietz were married May 3, 1974. The marriage was John's second and Barbara's first. John had three minor children from his previous marriage.

From their marriage, Barbara and John had five children. At the time of the dissolution decree in 1995, four of the couple's five children were still minors. The children were ages nineteen, fifteen, fourteen, eleven and nine at the time of the dissolution.

Barbara was the primary caretaker of the couple's five children and of John's three children from his previous marriage who came to live with Barbara and John shortly after their marriage.

At the time of the dissolution of marriage decree in 1995, Barbara was forty-eight years old. She was employed part time and full time at various periods during the marriage. Most recently, Barbara was employed as a stockbroker with PaineWebber until 1994, when she was terminated. Barbara

was also pursuing a masters degree at a university at the time of the dissolution, but still has not yet completed her course work.

John was forty-eight years old at the time of the dissolution. He had a high school education, but had never attended college. John was involved in sales at the time of the couple's marriage. In 1980, John became a stockbroker and continued in that profession until just prior to the dissolution proceedings.

John was financially successful as a stockbroker. From 1989 through 1993, his annual income averaged $200,000. In 1992, John reported a gross income of $537,204.

In September 1993, John was fired by his employer, PaineWebber. John was then hired by Stifel Nicholaus, another investment firm. At the time of hiring, Stifel Nicholaus paid John $100,000, secured by a forgivable note, on the condition he work for them for four years. This amount was to be forgiven at the rate of $25,000 for each year of employment.

John's employment with Stifel Nicholaus was not successful. The company expected John to bring a large share of his accounts from PaineWebber with him but this did not happen. Stifel Nicholaus eventually asked John to resign in March 1994. John did resign, but not without dispute.

Following an arbitration hearing, John was ordered to pay Stifel Nicholaus $53,000.[1] John did not pay the award and his stockbroker's license was subsequently suspended and eventually revoked.

The dissolution decree was entered April 11, 1995. The decree noted that neither party was employed at the time of the dissolution. Thus, the court's findings concerning alimony and child support were based on its view of the parties' earning capacities and their past actual earnings. The district court set Barbara's earning capacity at $25,000 to $50,000 per year and John's earning capacity at $150,000 to $200,000 per year.

The district court noted that John had been involved in a dispute with his former employer which might make it more difficult to work as a stockbroker. The court also stated that because of his work history, John might not be employable with brokerage houses in his community. Additionally, the court commented that John's lack of income was voluntary at that time and that John was unable to show where he spent marital assets totaling $179,126 since the parties' separation.

Based on John's earning potential, John was ordered to pay Barbara $4000 per month in alimony for twelve years and $4000 per month in child support, $1000 for each of the four minor children.

Thereafter, Barbara filed an application asking that John be held in contempt for failure to make alimony and child support payments. On September 18, 1995, five months after the dissolution decree was entered, the district court ruled that John had failed to comply with the terms of the decree and that his failure was "willful and contemptuous." The court ordered John to serve thirty days in jail unless he purged himself of contempt by bringing the child support and alimony current. The contempt matter is not before us on this appeal.

On October 2, 1995, John filed an application for modification of the dissolution decree concerning his alimony and child support obligations, asserting that a substantial change in circumstances had occurred, since entry of the dissolution decree, based on a decrease in his income. At the time John filed his application, he was employed as a lease manager at a car dealership with an annual salary between $40,000 and $50,000.

In ruling on the application to modify, the district court on May 23, 1996, found that John's anticipated income and earning capacity as estimated by the dissolution court had not been met one year after the decree. The modification court found that John's present annual gross earning capacity was $55,000 and that after deductions for taxes and health insurance he could anticipate a net monthly income of approximately $3,500.

---

1. The $53,000 was calculated by offsetting the $100,000 John owed with $47,000 that Stifel Nicholaus owed John.

The modification court thus concluded that the dissolution court's estimate of John's "anticipated income/earning capacity is no longer a possibility." The court found that John was unable to find a job with a high income as contemplated by the dissolution court, due to suspension of his broker's license, and that it was "doubtful that he [would] ever again reach the income level that he attained as a stockbroker." The modification court therefore reduced John's alimony payments to $1000 per month, effective June 15, 1996, for the next eleven years and his child support payments to $1300 per month, according to child support guidelines, effective February 1, 1996.

Barbara appealed. Upon our transfer, the court of appeals concluded that John intentionally reduced his income. The court of appeals therefore set aside the district court's modification and reinstated the support amounts set forth in the dissolution decree. Thereafter, we granted John's application for further review.

## II. Standard of review.

 Our review of a district court's modification of a dissolution decree is de novo. Iowa R.App. P. 4; *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998). "Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996).

## III. Should the dissolution decree have been modified?

### A. The parties' contentions.

On further review, John asserts that the court of appeals erred in finding that he intentionally reduced his income with reckless disregard to deprive Barbara and his children of support.

In response, Barbara argues that the dissolution court anticipated John might choose not to be employed at his potential level of income in order to reduce his alimony and child support obligations. She also claims

that John has no one to blame for suspension of his broker's license but himself. Barbara thus contends that these facts, plus additional facts in the record, support a finding that John intentionally reduced his income to deprive her and the couple's children of support.

Thus, the overall question is whether the district court erred in finding there had been a substantial change in circumstances after the April 1995 dissolution decree to warrant modifying John's support obligations. Specifically, we must consider whether John intentionally reduced his income.

### B. Applicable law.

 A dissolution court may modify child support and alimony provisions of a dissolution decree when there has been "a substantial change in circumstances." Iowa Code § 598.21(8) (1995). The party seeking modification must prove the change in circumstances by a preponderance of the evidence. *Walters*, 575 N.W.2d at 741. In *Walters* we discussed the following relevant principles which may be considered when ruling on a petition for modification:

(1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*Id.* (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)). A primary factor to be considered in determining whether support obligations should be modified is whether the obligor's reduction in income and earning capacity is the result of activity, which, although voluntary, was done with an improper intent to deprive his or her dependents of support. *See id.* This is because we have held that an obligor's volun-

tary reduction in income or earning capacity may be a basis for refusing to modify support obligations. *Id.*

### C. Application to the facts.

■ Upon our de novo review, we conclude that John did not intentionally reduce his income to deprive Barbara and his children of support. We therefore conclude that the district court properly held that John met his burden of showing that there was a substantial change in circumstances justifying a modification of his alimony and child support obligations under the dissolution decree.

First, we disagree with Barbara's contention that John was largely responsible for his termination from his last brokerage firm. We recognize that John was terminated for work performance, which according to his employer was unsatisfactory. However, Barbara has presented no facts suggesting John tried to get fired to avoid future support obligations.[2] Nor can we fault John for pursuing his lawful remedies concerning his termination.

We also recognize that Johns inability to retain his stockbroker's license was due to his failure to pay the $53,000 arbitration award. However, this is a substantial amount and as the modification court noted, one would question whether it would be appropriate to pay the arbitration award or to give that support to his family. Moreover, John is not employable in a brokerage firm without a broker's license. Even if he had a valid license, John would likely have difficulty obtaining new clients given his termination from two brokerage firms and the adverse results of the arbitration.

Additionally, the dissolution court was at a distinct disadvantage because both John and Barbara were unemployed at the time of the dissolution trial. The court therefore had to estimate or guess at the parties' future possible income. Based on John's past financial success as a stockbroker, the dissolution court estimated John's annual net earning capacity at $150,000 to $200,000.

We believe that the dissolution court's estimate was based on the assumption that John could continue to work as a stockbroker in the future. However, we agree with the modification court and do not believe that this was a realistic assumption. The record shows that John tried to, but was unable to find work as a stockbroker. Thus, the reality of the situation as noted by the modification court is that John will not and cannot return to his prior career. We also point out that John's advancing age and limited education are significant factors affecting his future earning potential. His competition in stock brokering would be from persons younger and with better education than he has. As a result, we doubt whether John will ever obtain a position that will pay $100,000 to $200,000 per year.

We do not ignore the fact that John at times has failed to make all alimony and child support payments. However, John is currently employed in a well paying, seemingly stable job, albeit at substantially less than what he was earning as a stockbroker. We do not consider John's actions surrounding his termination indicative of a reckless disregard of his support obligations. This is not a situation where the obligor has *refused* to pursue a previous career, *cf. Ellis v. Ellis,* 262 N.W.2d 265, 267–68 (Iowa 1978) (modification not allowed where obligor voluntarily retired at time when he still had substantial earning capacity), or quit a job to take a position with lower pay, *cf. In re Marriage of Bales,* 439 N.W.2d 228, 230 (Iowa App.1989) (modification not allowed where obligor quit job paying $15,000 per year to take job paying $5900 per year). Rather, John has simply been *unable* to resume his career as a stockbroker. Additionally, Barbara always has the right to file an application to modify should John's income increase in the future.

We therefore conclude that John did not intentionally reduce his income to avoid his alimony and child support obligations. We thus distinguish this case from others where we have held that an intentional reduction in income or earning capacity will preclude modification of support obligations. *See*

---

**2.** Barbara and John separated in January 1994. The dissolution petition was filed that same month. John was asked to resign in March 1994.

*Walters,* 575 N.W.2d at 741–42 (citing cases where modification of support obligations was not appropriate based on obligor's voluntary reduction in earning capacity).

In summary, the record shows that John realistically can no longer be employed as a stockbroker nor at the high income level he then enjoyed. The expectations of the dissolution court as to John's earning capacity cannot be achieved. He now is employed at a seemingly stable job at a lower income level that is still substantial. The modification court set his alimony and child support obligations at a lower level based on his present actual income. We thus conclude that John met his burden of proving that a substantial and material change of circumstances had occurred after the entry of the dissolution decree.

Neither party otherwise challenges the alimony amount nor the child support amount ordered by the modification court.

### IV. Disposition.

We conclude that the district court properly modified John's alimony and child support obligations based on his current income. We vacate the decision of the court of appeals and affirm the district court's order modifying respondent's alimony and child support obligations in all respects.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**