**IN THE COURT OF APPEALS OF IOWA**

No. 14-1294
Filed March 25, 2015

**IN RE THE MARRIAGE OF ELENITA DELACRUZ GRIFFITH
AND WILLIAM MARK GRIFFITH**

**Upon the Petition of
ELENITA DELACRUZ GRIFFITH,**
       Petitioner-Appellant,

**And Concerning
WILLIAM MARK GRIFFITH,**
       Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.

Appellant challenges the denial of her request for spousal support and

attorney's fees in this dissolution proceeding.  **AFFIRMED AS MODIFIED.**

Scott D. Fisher, West Des Moines, for appellant.

Eric Borseth of Borseth Law Office, Altoona, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Elenita Delacruz Griffith appeals from the decree dissolving her marriage to William Mark Griffith. On appeal, she challenges the district court's denial of her requests for spousal support and attorney fees. William seeks an award of appellate attorney fees.

I.

We review equitable proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). We examine the record and adjudicate rights anew on the issues properly presented. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g). Precedent is of little value because our determination must depend on the facts of the particular case. *See In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

II.

A.

Spousal support is a stipend to a spouse in lieu of the other spouse's legal obligation for support. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). A party does not enjoy an absolute right to spousal support after dissolution of the marriage. *See* Iowa Code § 598.21A (2013) (providing that "the court *may* grant an order requiring support payments to either party" (emphasis added)); *Anliker*, 694 N.W.2d at 540. The criteria for determining whether to award support and the amount of such support include the length of

the marriage, the age and health of the parties, the property distribution, the parties' educational level, the earning capacity of the party seeking support, the feasibility of that party becoming self-supporting at a standard of living comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal. *See Anliker*, 694 N.W.2d at 540.

We recognize the determination of the need for spousal support and the amount of any such support cannot be reduced to a mathematical formula; the facts and circumstances of each case are too varied for an equitable support determination to be reduced to a table or grid. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the amount of such support is based on the unique facts and circumstances of each case). Instead, the court must equitably balance the parties' respective prospective needs and means viewed in the light of the standard of living they enjoyed while married. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993) (stating that the parties' needs must be balanced); *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983) (stating that a party is entitled to receive support only in an amount sufficient to maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living). We give considerable latitude to the district court's determination of spousal support so long as the court has based its decision on the criteria in section 598.21A. *See Anliker*, 694 N.W.2d at 540.

We now consider the facts of this case in light of the foregoing principles. Elenita was born in the Philippines. The parties met in the Philippines, and Elenita immigrated to the United States in 1996 to marry William. One child was born to the marriage. William was awarded physical care of the child, and Elenita was awarded limited visitation and ordered to pay child support. At the time of the dissolution, Elenita was thirty-nine years old, and William was fifty-nine years old. Neither party has a college degree. For the last fourteen years Elenita has worked as a housekeeper at a hospital. Her gross annual income is approximately $29,000. During the course of this dissolution proceeding, William resigned his employment with Dallas County Hospital, where he worked as the facilities manager, earning gross income of approximately $79,000 per year. At the time of trial, William was unemployed. It is the circumstances leading to the cessation of William's employment and his future employment prospects that are at the heart of this appeal.

On November 7, 2013, Dallas County Hospital issued a written warning to William:

> [The hospital] has experienced significant long-term employment issues relating to your role as Facilities Manager. These issues have all been discussed with you previously. These include, but are not limited to complaints from multiple co-employees of bullying, aggressive behavior, and sexually explicit and inappropriate statements or actions. It also includes failure to meet the performance standards of completing weekly reports, sending managed up thank yous, meeting deadlines, and falling asleep during meetings.

The hospital gave William the option to resign with a severance package, which included payout of accrued vacation days and payment of his regular weekly pay through February 27, 2014, or to continue as facilities manager under a strict

performance plan subject to immediate termination without severance if expectations were not met. William signed the severance agreement on November 11, with an effective date of November 7. Since terminating his employment at the hospital, William has searched for similar employment without success.

William has physical limitations and corresponding work restrictions that impair his ability to find employment comparable to his prior position. He had hip replacement surgery in 2011 and suffers pain related to that condition. William also has impairments to both shoulders due to arthritic changes. William has filed an application for disability benefits, but he had not received a disability determination by the time of the dissolution trial. If approved for disability, William expected to receive benefits of $2256 per month plus an additional benefit of $1200 per month for his son.

The district court denied Elenita's request for spousal support:

> If this case had come to trial one year earlier, there is no question that an award of spousal support would be warranted. The couple has been married approximately 18 years. William had been earning between two and three times the amount of Elenita's earnings. Elenita has worked full-time throughout the marriage and there is no indication that her income level will change in the near-term.
>
> The question concerns William's ability to earn an income consistent with his income over the past several years. William suggested during his testimony that his job loss was due to downsizing, but that is not supported by the record. Rather, William voluntarily quit his job due to his unwillingness to meet the expectations of his employer and after being confronted with incidents of work misconduct. William could have tried to save his job by working to comply with his job requirements and company policies. He is unemployed today based on his voluntary decision.
>
> Notwithstanding the above finding, William has shown that it is unlikely that he will be able to find any commensurate

employment at or near the same salary. William is now 59 and he has significant physical limitations with his hip and shoulders. While he has experience as a managing employee, his line of work still requires some physical labor. He has not made much of an effort to look for employment, which is suspect in light of the timing of this dissolution action. William has applied for disability, but his doctor did not make a finding of disability. William can likely find some work, but whether he can work full-time or obtain employment at the same level of salary is doubtful at this point.

The courts look to a party's earning capacity, rather than their actual income, when setting support obligations. *In re Marriage of McKenzie*, 709 N.W.2d 528 (Iowa 2006). The court can refuse to lower a support obligation if one spouse/parent has voluntarily reduced his or her income. *Id.*; *In re Marriage of Swan*, 526 N.W.2d 320, 323-24 (Iowa 1995). The court may consider a party's physical ability to work when determining whether a change in income was voluntary and how it impacts earning capacity. *See Swan*, 526 N.W.2d at 324.

At this point, even though William's job loss was self-induced, the court cannot find that he has the same earning capacity. This case is distinguishable from those in which a party voluntarily quits a job to purposefully reduce support, or one in which the person quits with the intent to get a comparable new job after the order is issued. William is a 59-year-old man with no post-high school education. He has done manual labor his whole life and now has several physical limitations. The most reasonable estimate of his work capacity is his evidence that he would be able to earn $2,256.00 per month if he gets disability. It is unclear whether he can get disability, but if not, he can likely earn that much based on his experience in maintenance work. Elenita's request for spousal support must be denied, and child support will be set according to this finding. This decision may be subject to a future modification if William's earnings are materially different.

Elenita contends the district court erred by declining to use William's earning capacity as opposed to his current income when making the spousal support determination. Using a party's earning capacity instead of actual earnings may be appropriate where there has been a voluntary reduction in income. *See, e.g.*, *Marriage of McKenzie*, 709 N.W.2d at 533; *In re Marriage of Rietz*, 585 N.W.2d 226, 230 (Iowa 1998) (explaining a voluntary reduction in income or earning capacity may be a basis for refusing to modify a support

obligation); *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997) (noting if a parent voluntarily reduces income or decides not to work "it may be appropriate to consider earning capacity rather than actual earnings" when calculating child support). While William voluntarily resigned his employment rather than perform acceptable work for his employer, there is little to no evidence William terminated his employment for the purpose of reducing his income to evade his support obligations. The resignation of his employment was thus not "voluntary" or "self-inflicted" as those terms are used in our case law. *See Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993) (discussing the self-infliction rule and citing cases).

Nonetheless, we conclude the failure to award spousal support to Elenita fails to do equity between the parties. Several considerations militate in favor of an award. Elenita emigrated from the Philippines for the purpose of marrying William. The parties were married for a long period of time. Elenita lacks a college degree and has limited opportunities to increase her compensation materially. Over the course of the parties' lengthy marriage, William earned several times more than Elenita on an annual basis. Rather than continue his employment to provide for his son and his former spouse, William chose to resign his employment under circumstances where his employer required only that he competently perform his work, e.g., not fall asleep during meetings or make sexually-inappropriate remarks. The parties were accustomed to a certain standard of living given William's wages, which neither party can achieve given William's decision to resign his employment. Given the foregoing, a spousal support award in the amount of $150 per month for sixty months is appropriate,

subject to modification if there is a material and substantial change in circumstances. *See In re Marriage of Marshall*, 394 N.W.2d 392, 394 (Iowa 1986) ("First, where there is no initial award of alimony, a decree of dissolution cannot be modified to include alimony."). Our basis for this award relies on William's expected actual income and not his earning capacity.

## B.

Elenita contends the district court erred in denying her request for $2000 in attorney fees. The trial court has discretion in awarding attorney fees. An attorney fee award "'depends on the respective abilities of the parties to pay.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 704 (Iowa 2013) (citation omitted). "To determine the ability to pay, we review the parties' entire financial picture, 'including their respective earnings, living expenses, and liabilities.'" *Id.* (citation omitted). Elenita does not cite any authority in support of her argument. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). The issue is waived. Iowa R. App. P. 6.903(2)(g)(3). Even if we were to consider the argument on the merits, we could not conclude the district court abused its discretion in ordering the parties to pay their own attorney fees.

## C.

William seeks an award of appellate attorney fees in the amount of $3000. Appellate attorney fees are not a matter of right but rest within our discretion. *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party

making the request was obligated to defend the decision of the trial court on appeal." *Id.* Because we have modified the decree to include an award of spousal support, an award of fees is not appropriate. *See* Iowa Code § 598.36 (awarding fees to the prevailing party).

III.

For the foregoing reasons, the decree of dissolution of marriage is modified as set forth in this opinion.

**AFFIRMED AS MODIFIED.**