# IN THE COURT OF APPEALS OF IOWA

No. 14-1935
Filed February 10, 2016

IN RE THE MARRIAGE OF WENDY L. LAFRENZ
AND GARY D. LAFRENZ

Upon the Petition of
WENDY L. LAFRENZ,
      Petitioner-Appellant,

And Concerning
GARY D. LAFRENZ,
      Respondent-Appellee.

_____

      Appeal from the Iowa District Court for Cerro Gordo County, DeDra L.

Schroeder, Judge.


      Wendy Lafrenz appeals the district court's modification of the decree

dissolving her marriage to Gary Lafrenz.  **AFFIRMED.**




      David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

      Gary D. Lafrenz, Mason City, appellee.



      Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Wendy Lafrenz appeals the district court's order reducing Gary Lafrenz's child support obligations and denying her application for mittimus to issue. She contends the district court erred in modifying Gary's child support obligation because Gary has not proved a substantial change in circumstances. She further argues the court erred in only imputing an annual income of $30,000 to Gary. Next, Wendy asserts any change in Gary's employment and income was voluntary. Finally, Wendy claims the court's prior order finding Gary in contempt of court impedes his ability to receive a modification of his child support obligations. Upon our de novo review, we affirm.

## I.      Background Facts and Proceedings

Gary and Wendy's seventeen-year marriage was dissolved on January 31, 2008. The parties have two children: A.L., born in 1993, and C.L., born in 2000. The parties exercise joint legal custody of the children. Wendy has physical care of the minor child, C.L.

Pursuant to the parties' original stipulation and decree, Gary was required to pay child support to Wendy in the amount of $1400 per month for the parties' two minor children and to maintain health insurance for the children. The parties were to remain co-owners of the marital home with Wendy receiving exclusive physical possession to live there with the parties' minor children until the youngest child graduated high school, and then the home was to be sold and the proceeds divided. In lieu of spousal support, by way of a property settlement, Gary agreed to pay the homestead's principal mortgage indebtedness and

interest,[1] real estate taxes, and home insurance. He also agreed to pay the $15,000 line of credit associated with the homestead within ninety days of entry of the decree.

Gary is sixty-two years old. He suffers from post-polio syndrome and resulting arthritis. On November 7, 2013, Gary underwent his third back surgery in twelve years. He requires a lift in his shoe and had five surgeries on his leg as a child. He is unable to stand on his feet for long periods of time. Gary graduated high school and has completed some college but has not obtained a degree. Gary, Wendy, and the parties' children all reside in Gary's hometown of Mason City. Throughout most of his adult life, Gary worked for his family's car dealership in Mason City. At the time of the parties' divorce in 2008, Gary owned twenty-five percent of the family-owned dealership and served as president of the dealership.[2] For the last ten years he was employed with the dealership, Gary focused on online automotive marketing. He also served on the Board of Directors for FordDirect, an online marketing company for Ford dealerships. Gary eventually sold his interest in the dealership after it was discovered that the dealership had been losing money—Gary believed the dealership's business managers had been embezzling money from the business. As part of the business buy-out agreement, Gary received a two-year contract to continue working for the dealership and actually worked for one additional year beyond the

---

[1] The mortgage secured a loan in the amount of $130,000, held by Wells Fargo. The loan originally had a monthly payment of $1385 per month.
[2] Gary also owned an inherited quarter-ownership interest in a family cabin in Minnesota. Gary co-owns the cabin with his siblings, who are unwilling or unable to purchase Gary's interest.

contract until May 2011, when he was asked to retire. Following Gary's forced retirement, his mother passed away, and Gary received an inheritance that, combined with the dealership buy-out, equaled approximately $125,000.

After leaving the dealership, Gary intended to work for an online automotive marketing company in Des Moines and anticipated a six-figure salary as a dealer relations manager; however, the business never came to fruition. Gary put out "feelers" and applications to other dealerships and businesses to find similar employment at a comparable salary but was unsuccessful. While continuing to look for better employment, Gary worked part time at a local restaurant making minimum wage plus tips. He also worked for a local credit union, completing yard work, cleanup, and restoration work on properties repossessed by the credit union to help pay off a line of credit Gary owed to the credit union. Gary also worked for a company selling high-end women's clothing. With all of these odd jobs combined, Gary earned a gross annual salary of $13,000.

Prior to the sale of the car dealership, Gary paid his various obligations. But since his forced retirement, Gary has needed to borrow money from his siblings, his friends, and a neighbor. He also expended all of his retirement accounts to meet his obligations. At the time of the modification hearing, Gary owed significant debts to family, friends, credit cards, and other obligations.[3] Gary was covered by Medicaid and received food stamps in the amount of $347 per month.

_____

[3] Gary owned a vehicle that he borrowed against to meet his obligations. At the time of the modification hearing, Gary owed more money on the loan than it was worth.

Due to his financial constraints, Gary was able to negotiate an agreement with Wells Fargo regarding the loan and securing mortgage on the homestead to allow him to pay $931 per month for a period of three months beginning November 1, 2014. At the time of the modification hearing on November 12, Gary had not made the November payment. The oral agreement with Wells Fargo provided that if payments were not received, the home would be subject to foreclosure. Regarding the $15,000 line of credit associated with the home, Gary was able to pay double his $25 monthly payment he negotiated with Wells Fargo. Gary also maintained his life insurance policy in the amount of $150,000 to secure payments of debts and child support obligations he had under the parties' original stipulation and decree. However, Gary was $1728 in arrears on his child support obligation and also in arrears on his rent.

At the time of the modification hearing, Wendy was forty-nine years old and in good health. She was living in the marital home in Mason City with the parties' minor child. Wendy graduated from high school and attended one year of business school. At the time of dissolution, Wendy was unemployed. Following the dissolution, Wendy gained part-time employment making $11 per hour as an administrative assistant for the Court Appointed Special Advocate's office. In April 2013, Wendy began working full time as a legal assistant for the Cerro Gordo County Attorney's Office, earning $15 per hour. Wendy also received benefits through her local government employment, including health insurance for herself.

On October 18, 2013, the district court approved a joint voluntary stipulation modifying decree, which modified Gary's child support obligation to $976 per month for one minor child after the parties' oldest child reached age eighteen. At the time, Gary was not working but believed he would soon have employment and could earn a significant income to make the child support payment.

On March 12, 2014, Wendy filed an application for citation for contempt of court, claiming Gary was four months in arrears on his child support obligation, in addition to being delinquent on other obligations. On April 14, 2014, the district court continued the hearing on Wendy's application for contempt until August 4. That same day, Gary filed a petition to modify his child support obligation and the requirement that he provide health insurance for the minor child.[4]

On August 26, 2014, the court entered an order finding Gary in contempt for failing to extinguish the $15,000 line of credit within ninety days of the January 2008 decree. The court ordered Gary to serve three days in jail unless he submitted to Wendy "a reasonable written plan of payment for the mortgage, line of credit and child support and subsequent[ly] adhere[d] to that payment plan." In regard to Gary's overdue child support payments and the mortgage indebtedness, the court found he had not caused his loss of income or inability to gain employment at the standard to which he previously enjoyed in order to

---

[4] Gary later withdrew his request to modify the health insurance requirement after obtaining Medicaid, Title XIX insurance, for the parties' minor child.

In his petition to modify, Gary also requested that the district court order the parties' homestead be sold; however, the district court determined it did not have jurisdiction to modify the property settlement terms of the parties' original stipulation and decree to order the sale of the homestead.

escape his obligations. The court also found Gary's inability to gain health insurance for the child was also not of his own making because the child was not in his physical care, and therefore, he could not qualify for the Hawk-I health insurance program, and Gary could not afford private insurance.

On October 27, 2014, Wendy filed an application for mittimus to issue stating Gary had not submitted a reasonable written plan of payment following the court's August 26 ruling. On November 12, the parties appeared before the district court for both Wendy's application and Gary's petition to modify his child support obligation. Wendy resisted Gary's petition claiming Gary had voluntarily reduced his income, and therefore, he was not entitled to a reduction in his child support obligation.

On November 20, 2014, the district court granted Gary's request to modify his child support obligation after finding a substantial change in circumstances warranted a modification of the child support provisions of the decree. Although the district court believed Gary had "made every effort to find employment of a salary comparable to which he previously enjoyed," it determined Gary could find employment at an annual income higher than $13,000 and imputed income to Gary in the amount of $30,000 annually. The court found Wendy had an annual income of $23,257. Accordingly, the district court reduced Gary's child support obligation to $445 per month, plus cash medical support in the amount of $125 per month. The court further ordered any medical bills, after payment of the first $250 annually out of pocket by Wendy, be divided and paid fifty-one percent by Gary and forty-nine percent by Wendy. Regarding Wendy's application for

mittimus to issue, the court determined Gary's written plan of payment for the home mortgage loan, the line of credit, and his child support obligation was reasonable given Gary's financial circumstances and denied the application.[5] Wendy appeals.[6]

## II.    Standard of Review

We review a district court's decision modifying a decree for dissolution of marriage de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will not disturb a district court's ruling on a modification unless that ruling failed to do equity. *Id.*

Regarding Wendy's application for mittimus to issue, we review the district court's decision for an abuse of discretion. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).

---

[5] The court declined to make a determination that Gary failed to adhere to the payment plan as a result of his failure to make the November mortgage loan payment.

[6] Gary has failed to file an appellate brief.

> When the appellee fails to file a brief, we "handle the matter in a manner most consonant with justice and [our] own convenience." *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976). In this case, we will not search the record for a theory to uphold the decision of the district court, but will "confine [ourselves] to the objections raised by the appellant." *Id.* In addition, we will not go beyond the ruling of the trial court in searching for a theory upon which to affirm its decision. *State ex rel. Buechler v. Vinsand*, 318 N.W.2d 208, 209 (Iowa 1982).

*White v. Harper*, 807 N.W.2d 289, 292 (Iowa Ct. App. 2011).

**III.     Analysis**

*A. Child Support Obligation*

Even though a support obligation is based upon a stipulation, it may still be subject to modification. *In re Marriage of Wilson*, 572 N.W.2d 155, 157 (Iowa 1997). Under Iowa Code section 598.21C(1) (2013), a court may modify a child support order when the parent seeking modification is able to show "a substantial change in circumstances," including "changes in the employment, earning capacity, income or resources of a party." *See also In re Marriage of Michael*, 839 N.W.2d 630, 635 (noting a substantial change in circumstances must have occurred since the court's prior modification order). Section 598.21C(2) provides "a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount" that would be due under the child support guidelines. The district court may also consider whether the change in circumstances is permanent and not merely temporary. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983). The parent seeking modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Rietz*, 585 N.W.2d 226, 229 (Iowa 1998).

Wendy argues the district court erred in modifying Gary's child support obligation because Gary has not proved a substantial change in circumstances since the court entered the joint voluntary stipulation modifying decree in October 2013. She contends any change in circumstances is temporary and not permanent. Further, she claims any change in Gary's employment and income

was voluntary because he has failed to look for jobs outside of his hometown of Mason City, where Wendy and their minor child also reside.

Per the October 2013 modification, Gary's monthly child support obligation was $976 for one minor child. Although Gary was then unemployed, he anticipated being employed at a salary comparable to that which he had earned while employed with the car dealership he once partially owned. Based on this belief, Gary agreed to pay $976 per month in child support. Gary's anticipated opportunity for employment never materialized, and Gary started taking on consultation work and various odd jobs in order to pay his expenses and various obligations. At the modification hearing, Gary presented evidence he was earning a gross annual income of $13,000. After considering Gary's actual earnings—as well as his background, age, education, and health—the district court imputed to Gary an annual income of $30,000. The district court then applied the child support guidelines and calculated Gary's child support obligation to be $445 per month. Because the variance exceeded ten percent, the court determined a per se substantial change in circumstances existed and modification was proper.

Our de novo review of the record makes it clear that the evaluations made of the evidence and the conclusions reached by the district court hinged on whether the court found Gary's testimony credible concerning his employment circumstances. The order of modification recites: "This Court is convinced that Gary Lafrenz has made all reasonable efforts to obtain employment at a rate which he previously enjoyed. Unfortunately, it does not appear likely that that is

a wage that he will be able to earn in the future." Giving deference to the obvious credibility determinations made by the district court, *see McDermott*, 827 N.W.2d at 676, we agree with the district court's conclusion that Gary has sought similar employment at a comparable salary to what he was making before involuntarily retiring from the car dealership he once held an ownership interest in. Gary testified he was asked to leave his employment with the car dealership in May 2011. Since that time, Gary has attempted to gain employment in automotive online marketing, business development, sales managing, and investor relations, all of which he hoped would provide him with a salary comparable to what he had earned with the car dealership. Gary testified at the modification hearing that he has applied for jobs outside of Mason City, including the anticipated job with the automotive online marketing and auctions company in 2013 in Des Moines, as well as car dealerships in Minnesota. He has been unsuccessful and has taken on odd jobs to try to meet his obligations owed to Wendy and others. Gary has exhausted his retirement accounts and borrowed money from family, friends, and a neighbor. He is on Medicaid and is receiving food stamps monthly. Based upon this evidence, we cannot conclude that Gary's financial situation is temporary or voluntary.

Wendy also argues the court erred in only imputing to Gary an annual income of $30,000. She contends the court should have imputed an income similar to what he earned when he was employed with the car dealership. *See In re Marriage of Roberts*, No. 10-1561, 2011 WL 2556777, *3 (Iowa Ct. App. June 29, 2011) ("One of the most significant factors used to determine earning

capacity is previous salary." (citing *In re Marriage of McKenzie*, 709 N.W.2d 528, 534 (Iowa 2006))).

A court will use a party's actual earnings unless the court finds a "substantial injustice would occur or adjustments would be necessary to provide for the needs of the child and to do justice between the parties." *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997). When faced with the decision whether to use a parent's earning capacity rather than actual income, a court must consider if the parent's inability to earn a greater income is voluntary. *See McKenzie*, 709 N.W.2d at 533. If the reduction in income is a "self-inflicted" wound, it does not constitute grounds for modification. *See In re Marriage of Blum*, 526 N.W.2d 164, 165 (Iowa Ct. App. 1994).

Here, the district court found that to calculate Gary's income based upon his actual annual earnings of $13,000 would be "grossly unfair" to the parties' minor child and imputed an annual income to Gary of $30,000. As noted above, we cannot find that Gary's current employment and financial situation is voluntary or "self-inflicted." He has sought employment that would provide him with a comparable salary to what he was earning at the time of the parties' dissolution and what he anticipated earning following the 2013 modification, but he has been unsuccessful. Thus, we find the district court was correct in imputing an annual income of $30,000 to Gary.

Wendy further contends the court's prior finding that Gary was in contempt of court impedes his ability to receive a modification of his child support obligation. *See* Iowa Code § 598.21C(1)(j) (noting the court may consider

contempt findings in determining if there has been a substantial change in circumstances). The record does not clearly show that Wendy raised this claim in the district court, and the district court did not expressly consider that factor. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Without deciding whether the issue was preserved for this appeal, we determine the district court quite clearly was aware of the contempt issues when it considered the modification action—the matters were consolidated for hearing and the ordered provisions for both were included in the court's final order—and yet made no reference to the factor in determining whether a substantial change in circumstances had occurred. We cannot conclude the court's prior order finding Gary in contempt of court prevented the court from reducing Gary's child support obligation.

*B. Application for Mittimus to Issue*

Wendy argues the district court erred in denying her application for mittimus to issue "because no other procedures have been effective in ensuring Gary's compliance with court orders."

In August 2014, the district court found Gary in contempt for failing to extinguish the $15,000 line of credit within ninety days of the January 2008 decree. The court ordered Gary to serve three days in jail unless he submitted to Wendy "a reasonable written plan of payment for the mortgage, line of credit and child support and subsequent[ly] adhere[d] to that payment plan." In October,

Wendy filed her application for mittimus to issue. Following a hearing on Wendy's application and Gary's petition to modify, the district court considered Gary's written plan and concluded it was "reasonable in light of Gary's current circumstances." Accordingly, we cannot find the district court abused its discretion in denying Wendy's application for mittimus to issue.

## IV. Conclusion

Upon our de novo review of the record, we agree with the district court that Gary has undergone an involuntary, permanent, and substantial change in employment and earns a significantly lower income than he anticipated earning at the time of the modification in October 2013. We further find the district court was correct in imputing an annual income of $30,000 to Gary. Additionally, we conclude the district court did not abuse its discretion in denying Wendy's application for mittimus to issue. Accordingly, we affirm.

**AFFIRMED.**