# IN THE COURT OF APPEALS OF IOWA

No. 19-1951
Filed July 22, 2020

IN RE THE MARRIAGE OF TAMRA J. HALLBERG
AND CLAY F. HALLBERG

Upon the Petition of
**TAMRA J. HALLBERG,**
        Petitioner-Appellee,

**And Concerning**
**CLAY F. HALLBERG,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Fayette County, Alan T. Heavens,

Judge.


        In this post-dissolution of marriage modification action, the payor of spousal

support appeals the district court's order denying his request to reduce the support

obligation.  **AFFIRMED ON BOTH APPEALS.**


        James S. Updegraff, West Union, for appellant.

        Gary J. Boveia of Boveia Law Firm, Waverly, for appellee.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

In 2015, the thirty-six-year marriage of Tamra and Clay Hallberg was dissolved by entry of a stipulated decree. The terms of the parties' stipulation incorporated into the decree included Clay's obligation to pay spousal support[1] of $4000.00 per month for ten years. At the time the stipulation was entered, Tamra was fifty-six years old and Clay was fifty-eight.

At the time the marriage was dissolved, Clay was working as an emergency room physician making in excess of $200,000.00 per year.[2] In October 2018, Clay voluntarily ended his employment as an emergency room physician and chose to join a startup medical clinic in his hometown of Oelwein, even though he anticipated making slightly less money than he had been making as an emergency room physician. Even before Clay officially made the transition to the startup medical clinic, he filed this modification action seeking to reduce or eliminate his spousal support obligation based on a claimed reduction of his income.

The startup medical clinic did not develop as planned. By March 2019, all staff, including Clay, took pay reductions of fifty percent or more in an effort to save the clinic. Even those drastic efforts did not work, and the clinic closed in June 2019.

---

[1] The stipulation labeled the spousal support obligation as "alimony." Although the terms spousal support and alimony are used interchangeably, "the term 'alimony' was formally eliminated from our statutory law in 1980 and replaced by 'spousal support.'" *In re Marriage of Ales*, 592 N.W.2d 698, 702 n.2 (Iowa Ct. App. 1999). Therefore, we will refer to the obligation as spousal support.

[2] Clay typically worked twenty-four-hour shifts two times per week to generate this income.

After the clinic closed, Clay returned to working as an emergency room physician. He was offered twenty-four-hour shifts, just as he had worked in the past, but he declined. He also declined to work night shifts, thus limiting himself to twelve-hour day shifts. This limitation on his availability for work resulted in fewer shifts, less steady shifts, and less income.

After a trial, the district court issued a ruling denying Clay's request for modification and Tamra's request for attorney fees. Clay appeals. Tamra cross-appeals the denial of her request for trial attorney fees and requests appellate attorney fees.

## I. Standard of Review.

We review orders ruling on modification of a decree of dissolution of marriage de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). In conducting such review, we give weight to the findings of the district court, particularly regarding the credibility of witnesses, but we are not bound by them. *Id.* We disturb modification rulings only if there has been a failure to do equity. *Id.*

## II. Legal Standards.

Courts are permitted to modify a spousal support order when there is a substantial change in circumstances. *Id.*; *see also* Iowa Code § 598.21C(1) (2019). "All relevant factors are considered in determining a substantial change in the circumstances, including changes in employment, income, earning capacity, health, and medical expenses of a party." *Sisson*, 843 N.W.2d at 870. Additionally, "the changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the decree." *Id.* at 870–71. The requirement that the changes not be within the contemplation

of the court includes not being in the contemplation of the parties when the original decree adopts a stipulation of the parties, as occurred here. *See, e.g., In re Marriage of Reis*, No. 01-1022, 2002 WL 1072085, at *2 (Iowa Ct. App. May 31, 2002) (noting the deterioration of the wife's health was "not in the contemplation of the parties at the time of their stipulation or the court when it entered the decree").

## III.   Discussion.

On our de novo review, we acknowledge Clay is currently making less income than at the time the parties entered their stipulation incorporated into the dissolution decree.  However, this does not constitute a substantial change in circumstances for three largely related reasons.

First, the change in Clay's employment that resulted in decreased wages was a voluntary change.  "[A]n obligor's voluntary reduction in income or earning capacity may be a basis for refusing to modify support obligations." *In re Marriage of Rietz*, 585 N.W.2d 226, 229–30 (Iowa 1998).

Second, Clay has not demonstrated he has diminished earning capacity, as opposed to diminished income. *See In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013) ("We may consider the unrealized but existing earning potential of a party at the time of the decree and contrast that with a later established earning potential as part of our determination of whether a substantial change in circumstances has been demonstrated.").  Upon his return to work as an emergency room doctor after the failure of the Oelwein clinic, Clay placed significant restrictions on his availability to work that he had not placed on his employment only a year earlier.  By refusing to work twenty-four-hour shifts and only being willing to work daytime hours, Clay limited his income, but his earning

potential remained the same. Clay is, of course, free to limit his income in this manner, but the burden of such decision should fall on Clay, not Tamra.

Third, the reasons for Clay's voluntary reduction of income were within the contemplation of the parties when the stipulated decree was entered. In July 2018, he wrote a letter to Tamra informing her of his plans to join the Oelwein clinic, which would allow him to "get a regular schedule and some sleep." When asked at trial why he ended his employment as an emergency room physician and joined the Oelwein clinic, Clay answered:

> Because it's always been hard to drive back to Oelwein, okay, when my dad practiced there for fifty years and I was born there; okay? It was always hard to come back from the emergency rooms around the state and drive back to your hometown and realize that people were getting worse care there than where you were just at and to hear the stories and watch the effect on people's lives and see how it turned out for them and to know those people; okay? That's why I came back.
> I could still make a living there. I wasn't going to go broke; okay? I might have to adjust some things, but I could sleep at night and I could feel good about myself; and at some point in time, that's worth more than money and I think I'm at that age.

He testified he is currently "not comfortable working more than twelve hours" in a shift, expressing concern he will make a mistake and "damage somebody" due to reduced mental acuity from working twenty-four-hour shifts at his age. We view all of these reasons as normal and expected considerations as a professional moves closer to retirement. As mentioned, Clay was fifty-eight years old when he entered the stipulation incorporated into the original decree, yet he agreed to pay spousal support for ten years. Clay and Tamra knew the ten-year payment period would take Clay past an age when many people retire, especially those who have been as financially successful as Clay. We find it implausible that Clay and Tamra

did not contemplate that Clay would want to rein in his work schedule, or even retire altogether, sometime during the ten-year period over which they agreed Clay would pay spousal support. Since the parties agreed to a payment period with knowledge the payment period may extend past a date that Clay decided to retire, the fact that Clay cut back voluntarily on his work as a natural progression toward retirement early in that ten-year period does not constitute a substantial change in circumstances. *See Ellis v. Ellis*, 262 N.W.2d 265, 267–68 (Iowa 1978) (finding voluntary retirement while remaining able-bodied did not justify modification of spousal support obligation, even when the payor retired in good faith).

On our de novo review, we find no substantial change in circumstances outside the contemplation of the parties and the district court at the time the stipulated decree was entered that would justify a modification of Clay's spousal support obligation.

## IV.     Attorney Fees.

Tamra cross-appeals the district court's decision not to award her attorney fees. She also requests appellate attorney fees.

An award of attorney fees in a dissolution of marriage modification action rests in the sound discretion of the district court and will not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Ability to pay is the controlling factor in attorney fee awards. *Id.* The district court considered the ability of both parties to pay attorney fees based on their entire financial pictures and found each party should pay their own attorney fees. We find no abuse of discretion in the district court's decision, and we affirm the district court on Tamra's cross-appeal.

Turning to Tamra's claim for appellate attorney fees, we have considerable discretion in determining whether to award such fees to the prevailing party in a dissolution modification action. *Michael*, 839 N.W.2d at 639. The controlling considerations in the determination of an appellate attorney fee award are the parties' respective abilities to pay. *Id.* The appellate court may also consider whether the party resisting modification was successful and whether the party was obliged to defend the district court's decision on appeal. *Id.* Here, while we share the district court's view that both parties have the ability to pay their own attorney fees, we also note that Tamra was forced to defend the district court's decision on appeal and was successful in doing so. Therefore, we order Clay to pay $4000.00 of Tamra's appellate attorney fees.

## V. Conclusion.

We affirm the district court both with respect to Clay's appeal and Tamra's cross-appeal. We award Tamra $4000.00 in appellate attorney fees. Costs of appeal are assessed to Clay.

**AFFIRMED ON BOTH APPEALS.**