# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0017
Filed January 28, 2026

————————————

**In re the Marriage of Kimberlee Larson and Steven Larson**

Upon the Petition of
**Kimberlee Larson,**
Petitioner–Appellee,

And Concerning
**Steven Larson,**
Respondent–Appellant.

————————————

Appeal from the Iowa District Court for Dickinson County,
The Honorable Shayne Mayer, Judge.

————————————

**AFFIRMED AS MODIFIED**

————————————

Jamie Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, attorney
for appellant.

Jessica A. Zupp of Zupp and Zupp Law Firm, P.C, Denison, and
Michael L. Sandy of Sandy Law Firm, P.C., Spirit Lake, attorneys for
appellee.

————————————

1

Considered without oral argument
by Greer, P.J., and Badding and Chicchelly, JJ.  Sandy, J., takes no part.
Opinion by Badding, J.

**BADDING, Judge.**

Steven and Kimberlee Larson divorced in 2018 after a thirty-year marriage. As part of their stipulated dissolution decree, Steven agreed to pay Kimberlee $1,500 per month in spousal support for fifteen years.

Five years later, Steven petitioned to modify his spousal support obligation due to his decreased income and worsening health. The district court denied the petition, finding there was "no evidence offered to show that Steven's change in employment was anything other than voluntary." The court also found Steven's medical conditions were either known by the parties when they divorced or did not impact his earning capacity. Steven appeals.

## I.    Background Facts and Proceedings

Steven and Kimberlee married in 1988. They had three children together, all of whom were adults at the time of the dissolution. Steven worked full-time during the marriage at sow farm operations. In 2009, Steven accepted a job with New Fashion Pork, eventually working his way up to become the director of grow finish production. Meanwhile, Kimberlee stayed home with the children or worked flexible jobs that allowed her to be off when the children were not in school.

When Steven and Kimberlee divorced in 2018, Steven was earning $90,841 gross per year at New Fashion Pork. Kimberly was employed as the director of a daycare center, where she earned a gross annual salary of $48,700. The final decree incorporated the parties' stipulation that Steven would pay $1,500 per month in spousal support for fifteen years. Kimberlee testified they agreed to "a little bit higher amount for a shorter time so [Steven] would be done paying by the time he hit retirement" at age sixty-

3

seven.  Steven also agreed to maintain a $250,000 life insurance policy naming Kimberlee as the sole beneficiary for the duration of the support period.  The policy costs Steven $1,195 per year.

In January 2020, Steven relocated to Indiana to help with a New Fashion Pork facility that was having management issues.  Although he sold his house in Iowa, Steven testified the move was temporary: "Instead of me living here, I would live out there for two years to train, coordinate, and help the production unit out."  But in October 2021, the company restructured its leadership and hired someone to fill his job in Iowa.  Steven testified that he was permanently reassigned to a supervisor position in Indiana—a demotion from his director role—which came with a thirteen percent salary reduction.

Unwilling to remain separated from his fiancée and family in Iowa, Steven applied for a supervisor position with New Fashion Pork that was based out of northwest Iowa and paid the same as what he was earning in Indiana.  Steven was not hired for that position, but the company agreed to move him back to Iowa and start him in an auditing position.  But in January 2022, after he relocated to Iowa, Steven testified that he was called into his supervisor's office and told "they were not going to give me that position of auditor, that if I wanted to keep my job with New Fashion, I was going to be a feed truck driver through Round Lake, Minnesota."  The truck driving position was a further demotion and reduced his pay to $20 per hour.

In December 2022, Steven slipped on ice while delivering feed and sustained a rotator cuff injury that required surgery the next year.  Around the same time as the surgery, Steven's doctor informed him of an arterial blockage in his heart.  These conditions were on top of a spinal cord injury Steven suffered in 2016 that led him to receive a twenty percent disability rating.

Steven left New Fashion Pork in January 2023 to become a supervisor at a family-owned hog operation, where he earns a gross annual salary of $61,000. That same month, Steven petitioned to modify his spousal support obligation. He was fifty-eight years old and remarried by the February 2024 trial on his petition. Despite his reduced income and ongoing health issues, the record shows that Steven and his wife have traveled to Hawaii, Massachusetts, Wisconsin, Illinois, Minnesota, and Wisconsin for vacations. The couple have also taken "four or five" Caribbean cruises, an Alaskan cruise, and visited Jerusalem.

Meanwhile, Kimberlee stayed in her director position at the daycare until the fall of 2020, when she left because of the stress that came with the COVID-19 pandemic. She was briefly employed with another organization before returning to the daycare in 2022. By 2023, fifty-six-year-old Kimberlee was earning $58,594 per year. But she does not have any insurance, retirement, or other benefits through her employment. Kimberlee lives in a home that she owns but shares with her significant other. Although they are not married—and keep their finances separate—Kimberlee testified that her partner pays her between $600 to $1,200 per month to help with household expenses.

At the trial on his modification petition, Steven asked the court to reduce his spousal support obligation to $500 a month, with payments ending in five years.[1] The district court denied that request and ordered Steven to pay $4,150 towards Kimberlee's attorney fees. Steven appeals, challenging the court's failure to modify his spousal support obligation and its order

---

[1] Steven also sought to end the life insurance policy naming Kimberlee as the beneficiary, but he does not challenge the court's denial of that request on appeal.

requiring him to pay attorney fees. Both parties request an award of appellate attorney fees.

## II.    Standard of Review

Equitable proceedings, such as a modification of spousal support, are reviewed de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). The court's ruling will be disturbed "only when there has been a failure to do equity." *Id.* (citation omitted).

## III.    Analysis

### A.    Spousal Support

Courts may modify a spousal support order upon a showing of a substantial change in circumstances. Iowa Code § 598.21C(1) (2023). The party seeking modification must prove the change in circumstances by a preponderance of evidence. *In re Marriage of Rietz*, 585 N.W.2d 226, 229 (Iowa 1998).

In determining whether that burden has been met, we consider statutory factors that include changes in employment, medical expenses, physical or mental health, remarriage, and financial support by another person. Iowa Code § 598.21C(1). We also consider the following principles from our modification case law:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result

in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998) (citation omitted).

When a reduction in a payor's income is at issue, like it is here, a

primary factor to be considered in determining whether support obligations should be modified is whether the obligor's reduction in income and earning capacity is the result of activity, which, although voluntary, was done with an improper intent to deprive his or her dependents of support. This is because we have held that an obligor's voluntary reduction in income or earning capacity may be a basis for refusing to modify support obligations.

*Rietz*, 585 N.W.2d at 229–30 (internal citation omitted).

The district court denied Steven's petition for modification, finding that his reduction in income was not a substantial change in circumstances for four reasons: (1) Steven voluntarily left his employment in Indiana to return to Iowa, resulting in reduced income; (2) the changes in Steven's health did not substantially impact his earning capacity; (3) the reasons for Steven's income reduction were within the parties' contemplation when they divorced; and (4) Kimberlee's receipt of financial assistance from her partner was also contemplated.

To start, we agree with the district court that Steven failed to prove his "health is substantially different from what the parties expected or contemplated in 2018, or that the changes in Steven's health since the dissolution have substantially impacted his earning capacity." Steven's twenty-percent disability rating from his 2016 spinal injury was known by the parties when they divorced. And although Steven tore his rotator cuff in

7

2022, he continued working full-time after that injury, albeit on light-duty restrictions. As for his heart blockage, Steven testified that his "general doctor told [him] just to be aware of that." Kimberlee is accordingly correct in arguing that Steven's medical conditions are "insufficient to justify modification."

But we disagree with Kimberlee's assertion that Steven's income historically fluctuated. Steven's income stayed relatively stable—with an upward trend—during the years that he worked with New Fashion Pork. That dramatically changed after Steven's first demotion in 2021, when his income dropped from $96,065 to $61,307 in 2022. We find this sudden decrease is a substantial change not within the contemplation of the court at the time of the dissolution. *See In re Marriage of Hayes*, No. 18-0156, 2018 WL 5292099, at *3 (Iowa Ct. App. Oct. 24, 2018) ("While some fluctuation in income may be a reasonable and ordinary change in circumstance, the steady increase in [the payee's] income and sudden decrease in [the payor's] income qualify as substantial changes not within the contemplation of the court at the time of the decree.").

The real question is the impact of Steven's job changes on his request for modification. Steven argues the reduction in his income was neither voluntary nor intended to deprive Kimberlee of support. He contends that when informed of his permanent reassignment to Indiana—after his pay was already reduced by thirteen percent—he sought a lateral transfer back to Iowa to be closer to his fiancée, children, and grandkids. Our case law supports Steven's argument.

This court has consistently held that a reduction in income caused by the desire to stay close to family is not necessarily self-inflicted or voluntary. *See In re Marriage of Blum,* 526 N.W.2d 164, 166 (Iowa Ct. App. 1994) (finding

8

that where a parent lost his job and refused to move to another town to take a higher paying job because he wanted to stay where his children lived, the reduction in salary was not self-inflicted or voluntary); *In re Marriage of Fidone,* 462 N.W.2d 710, 712 (Iowa Ct. App. 1990) (holding a parent's refusal to accept relocation as an alternative to discharge did not constitute a self-inflicted reduction in salary for purposes of determining whether child support provisions of divorce decree should be modified); *see also In re Marriage of Sliger*, No. 18-0458, 2019 WL 478833, at *2 (Iowa Ct. App. Feb. 6, 2019) (collecting cases that modified support obligations due to a payor's reduced income).

Likewise in *In re Marriage of Etnyre*, a father earned $95,000 in Nebraska but moved to Iowa to be close to his girlfriend and children after finding a job that paid the same. No. 06-0432, 2006 WL 3436474, at *3 (Iowa Ct. App. Nov. 30, 2006). However, that job was eliminated less than a year later. *Id.* He could not find a job with similar pay, so he accepted one that paid substantially less. *Id.* On appeal, we disagreed with the district court that "[the father] has an obligation to leave Iowa where he can enjoy a substantial relationship with his children to find a job that pays him an annual salary of $95,000." *Id.* at *4.

We find that Steven's situation falls within these cases. He reasonably believed his assignment to Indiana was temporary, and upon learning otherwise, tried to find a position with the same company in Iowa. When submitting his request for a lateral transfer, he stated the decision was motivated by a desire to be close to his family. The position that he applied for in Iowa, but did not get, would have paid the same as what he was earning in Indiana. Steven did not learn that he would be further demoted until he was already back in Iowa. *Cf. In re Marriage of McKenzie*, 709

N.W.2d 528, 534 (Iowa 2006) (denying a child support modification when the payor quit his job and moved to a different state with his girlfriend without having another job lined up). Although the district court found that the "record is absent any mention of a demotion," Steven's personnel file from New Fashion Pork shows that his pay was reduced in October 2021 and January 2022. The reason listed for both compensation changes is "demotion." *See Boquette v. Boquette*, 247 N.W. 255, 256 (Iowa 1933) (determining an obligor's demotion with resulting lower salary justified reduction of support obligation). In short, nothing in the record indicates that Steven's decision to move back to Iowa was an attempt to deprive Kimberlee of support.

We also disagree with the district court's conclusion that because "Steven's employment had repeatedly required Steven and Kimberlee to relocate during their marriage," it is "improbable" the parties "did not consider the possibility that Steven would again need to choose between moving for work or moving his family when the parties agreed to the stipulation." The parties did move four or five times during their thirty-year marriage. But they have lived in northwest Iowa since 2002. Their moves after that were all within the same area of the state. And when the parties divorced, their children were adults. So relocating with the family was no longer an option for Steven.

Under these circumstances, we conclude that Steven's reduced income is a substantial change of circumstances that is continuous and not contemplated by the parties or the court when the dissolution decree was entered. That said, we do not find that Steven's support obligation should be reduced by as much—or for as long—as he requests.

10

Steven earns $61,000 annually and resides in a home owned by his current wife. Although she is not obligated to contribute to Steven's support of Kimberlee, her income may be considered in evaluating his overall financial condition. *Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974). Similarly, Kimberlee's cohabitation and the financial support she receives from her significant may be considered, *see In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct. App. 1999), although it is not a significant factor in our analysis. *See In re Marriage of Gust*, No. 21-1088, 2022 WL 3907732, at *3 (Iowa Ct. App. Aug. 31, 2022) (finding that a recipient spouse's cohabitation alone did not support modification where her boyfriend contributed "a small amount of money for food and pays part of the rent").

We have also considered that since the dissolution, Steven has enjoyed several cruises and international trips. This pattern suggests that although his income has declined, his lifestyle remains largely unchanged. Steven's itemized expenses include monthly charges for travel, gifts, and Hilton Grand Vacations. While he is free to enjoy such discretionary spending, these expenses should not be used to justify a reduction to the support owed to Kimberlee by as much as Steven requests.

Given the parties' respective financial positions and the change in the income gap between them, we conclude that Steven's spousal support obligation should be reduced to $1,000 per month. *See In re Marriage of Michael*, 839 N.W.2d 630, 638 (Iowa 2013) (modifying spousal support obligation based on the same considerations). Steven shall begin paying the reduced amount of support on the first of every month after procedendo is issued. *See In re Marriage of O'Brien*, No. 22-0621, 2022 WL 17829114, at *3 (Iowa Ct. App. Dec. 21, 2022); *see also In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995) (stating retroactive modification is inappropriate

"when the level of alimony is decreased or terminated"). We do not, however, shorten the support period.

### B.    Attorney Fees

Next, Steven challenges the district court's award of $4,150 in attorney fees to Kimberlee. This court gives the district court broad discretion in such matters and will not disturb an award of attorney fees absent an abuse of discretion. *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). "The test is whether the fee is reasonable and based on the parties' respective abilities to pay." *Id.* After considering these factors, we find no abuse of discretion in the court's attorney fee award.

Both parties also request an award of appellate attorney fees. Such an award is not a matter of right but lies within this court's discretion. *McDermott*, 827 N.W.2d at 687. "Again our decision is guided by the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Geil*, 509 N.W.2d at 743. Considering the parties' comparable salaries and ability to pay, we find that neither is entitled to an award of appellate attorney fees.

**AFFIRMED AS MODIFIED.**