**In re the MARRIAGE OF Charles L. VETTERNACK and Beatrice M. Vetternack.**

**Upon the Petition of Charles L. Vetternack, Appellant,**

**And Concerning Beatrice M. Vetternack, Appellee.**

**No. 68800.**

Supreme Court of Iowa.

June 15, 1983.

Douglas V. Coonrad, P.C., Hudson, for appellant.

Melvin H. Wolf, Waterloo, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON, and CARTER, JJ.

HARRIS, Justice.

The question here is whether an order for child support payments should have been modified because the father became incarcerated for a felony. We agree with the trial court's refusal to modify the order.

We adopt as our own the trial court's statement of the facts:

The marriage of the parties was dissolved on March 12th, 1980. Pursuant to that decree, the petitioner was ordered to pay child support in the sum of forty dollars per week per child until each of the minor children reach the age of 18, died, married, or otherwise became emancipated, whichever might occur first. That decree further ... granted to petitioner a fifty percent interest in the equity [in the parties' residence dwelling].... At that time, petitioner was employed at the John Deere Tractor Works in Waterloo and was grossing approximately $415.00 per week.

On February 22nd, 1981, the petitioner was arrested on the criminal charge of terrorism [Iowa Code § 708.6 (1981)].... The terrorism alleged involved the firing of a firearm through the window of the respondent's residence while respondent and the children were home. As a result, he could not report

for work and lost his job. . . . Petitioner, after conviction, was sentenced to not more than five years and is presently incarcerated at Fort Madison. Because a firearm was used, he is under the minimum sentence provisions [Iowa Code § 902.7 (1981)]. His discharge date is July 17th, 1984. His only income is $40.00 per month which he receives as a prisoner in the . . . penitentiary.

The real estate has not yet been sold. The respondent continues to reside in the real estate and is paying no rent.

There are two children so the petitioner was paying $80 per week until his incarceration. The trial court pointed out that the petitioner's 50 percent equity in the home was worth approximately $15,000. Prior to his arrest and the termination of his employment support payments were made in accordance with the order.

■ We review orders on applications to modify child support provisions de novo. *Mears v. Mears,* 213 N.W.2d 511, 515–16 (Iowa 1973); Iowa R.App.P. 4. Nevertheless the trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity. *E.g., Norenberg v. Norenberg,* 168 N.W.2d 794, 797 (Iowa 1969).

Authority to modify dissolution decrees is given in Iowa Code § 598.21(8) (1981) which provides:

> The court may subsequently modify orders made under this section when there is a substantial change in circumstances. Any change in child support because of alleged change in circumstances shall take into consideration each parent's earning capacity, economic circumstances and cost of living.

A number of principles emerge from our cases: (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered. *See Ellis v. Ellis,* 262 N.W.2d 265, 267 (Iowa 1978); *In re Marriage of Glass,* 213 N.W.2d 668, 671 (Iowa 1973); *Mears v. Mears,* 213 N.W.2d at 514–15; *Spaulding v. Spaulding,* 204 N.W.2d 634, 635 (Iowa 1973).

This seems to be our first appeal presenting the claim that a support order should be modified because of the incarceration of the parent ordered to pay. We of course have frequently been called upon to consider whether support should be reduced because for some reason earning capacity has been reduced. *See, e.g., In re Marriage of Johnson,* 299 N.W.2d 466, 467 (Iowa 1980) (trial court was justified in declining to modify father's child support obligation, despite father's "loss of employment, the lengthy period of unemployment which followed and reduced income from his current employment"; father's remarriage had "significantly improved [his] overall financial condition"); *Ellis v. Ellis,* 262 N.W.2d at 267–68 (husband's voluntary retirement and resulting inability to pay alimony was "self-inflicted" and does not constitute ground for reduction of future payments; husband retained "substantial earning capacity"); *Donovan v. Donovan,* 212 N.W.2d 451, 453 (Iowa 1973) (father failed to show material and substantial change in circumstances justifying reduction in child support when his income had increased by 30 percent since decree was entered); *McDonald v. McDonald,* 183 N.W.2d 186, 189 (Iowa 1971) (mother's employment for first time was a material change in circumstances warranting modification of father's child support obligation; reduced from $4800 per year to $3900 per year); *Reed v. Reed,* 260 Iowa 1166, 1168–69, 152 N.W.2d 190, 191 (1967) (father's voluntary termination of employment and return to college, "[c]ommendable as it may otherwise be," did not warrant suspension of child support payments until

he had obtained degree); *Welch v. Welch,* 256 Iowa 1020, 1026–27, 129 N.W.2d 642, 645 (1964) (evidence of father's changed financial condition was "not persuasive"; father's take-home pay only declined from $70/week to $60/week); *Gesmacher v. Gesmacher,* 247 Iowa 836, 840, 76 N.W.2d 790, 792 (1956) (reduction of child support from $18 to $13/week warranted in view of father's permanent salary reduction of approximately 35.7 percent; "if there has been a substantial lowering of earning power a modification of the decree should be made"); *Prandy v. Prandy,* 241 Iowa 1050, 1054, 44 N.W.2d 379, 381 (1950) (reduction of father's wages due to reduced overtime pay warranted modification of child support from $80 to $60/month; "Our concern is the payment of support money for the children within the father's ability to do so"); *Corl v. Corl,* 217 Iowa 812, 814, 253 N.W. 125, 126 (1934) (husband's job change and reduction in salary from $150–$175/month to $30–$40/month warranted reduction in alimony from $35/month to $15/month; "[T]his record shows that the defendant is not able to make the payments the original decree required"); *Paul v. Paul,* 217 Iowa 977, 980–81, 252 N.W. 114, 116 (1934) (trial court was justified in reducing father's child support payments from $75 to $50/month where father's earnings, as partner in a private bank, were based entirely on net profits of the bank which closed in 1932; the fact "that considerable sums [of child support] still remain unpaid, does not, in our opinion, indicate any lack of good faith on the part of the appellant"); *Boquette v. Boquette,* 215 Iowa 990, 992, 247 N.W. 255, 256 (1933) (husband's demotion from engineer to fireman, and reduction in wages from $250 to $150/month constituted sufficient change so as to warrant modification of alimony payment from $45 to $35/month); *Toney v. Toney,* 213 Iowa 398, 401, 239 N.W. 21, 22 (1931) (husband's forced retirement at age 70 warranted modification of his alimony payments from $45 to $35/month; husband had earned $260/month, but his pension was only $95/month); *Nicolls v. Nicolls,* 211 Iowa 1193, 1197, 235 N.W. 288, 289 (1931) (reduction in husband's salary from $175/week to $150/month warranted modification of alimony payments from $50/week to $25/week; "appellee's ability to pay alimony is entirely different now than when the original judgment and decree was entered").

A review of these holdings indicates three trends: (1) a growing reluctance to modify decrees; (2) current inability to pay has become less a consideration and long range capacity to earn money has become more of a consideration; and (3) any voluntariness in diminished earning capacity has become increasingly an impediment to modification.

Both parties point to *In re Marriage of Edmonds,* 53 Or.App. 539, 633 P.2d 4 (1981), as authority for their position. In *Edmonds* the Oregon court suspended the incarcerated father's support obligation until 60 days following his release, after pointing out the absence of any other income or assets to make payments. *Id.* at 541–42, 633 P.2d at 5.

■ We agree with the trial court that the petitioner's equity in the house should be charged for the support payments he is unable to meet during the period of his incarceration. The crucial thing is that, during petitioner's incarceration, it will continue to be necessary to care, feed, and provide for his children. He remains responsible for those expenses. It would not be equitable for his equity in the home to remain set off to him while his children were being supported by others.

AFFIRMED.