**IN THE COURT OF APPEALS OF IOWA**

No. 14-0225
Filed June 24, 2015

**IN RE THE MARRIAGE OF CHAD FRASHER**
**AND JENNIFER FRASHER**

**Upon the Petition of**
**CHAD FRASHER,**
      Petitioner-Appellee,

**And Concerning**
**JENNIFER FRASHER,**
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Delaware County, Bradley J. Harris, Judge.

A mother appeals a modification order reducing her ex-husband's child support obligation and changing the visitation schedule. **AFFIRMED.**

Denis D. Faber Jr., of Denis D. Faber Jr., P.C., Dubuque, for appellant.

Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Jennifer Frasher challenges a district court order modifying the monthly child support obligation of her ex-husband Chad Frasher and changing his visitation schedule with their six-year-old daughter A.F. The court reduced Chad's monthly support payments from $800 to $440 based on the less lucrative, yet steadier employment he secured since the divorce. Jennifer argues the court should impute an income consistent with Chad's true earning capacity. She also asks us to eliminate Chad's midweek visitation, scheduled during the weeks he does not have extended weekend visitation, because she contends the court's amended order was a mistaken reading of the parents' stipulation. Jennifer also seeks her trial and appellate attorney fees. Chad requests appellate attorney fees.

The district court determined Chad's reduction in income was not "brought about by improper intent or reckless conduct." In our de novo review of the record, deferring to the district court's credibility determinations, we agree and affirm the child support provision in the modification order. Likewise, we affirm the amended visitation provision because allowing Chad a midweek visit was the practice of the parties and remains in A.F.'s best interest.

Because of the parity in the incomes of the parties, we affirm the district court's denial of trial attorney fees to Jennifer and decline to award either party appellate attorney fees.

## I.    Background Facts and Proceedings

Chad and Jennifer were married in 2003 and had one child, A.F., who was born in 2007.  The couple divorced in 2011 and the decree awarded physical care of A.F. to Jennifer with liberal visitation for Chad.

At the time of the dissolution, Chad was a heavy machine operator and belonged to the International Union of Operating Engineers Local 234, which would place him in temporary jobs, some in-state and some out-of-state.  The dissolution court described Chad as "very lucky in his employment" over the past few years.  Chad asked the dissolution court to calculate his child support using his in-state salaries, which ranged from $40,000 to $50,000 annually.  The court declined and explained Chad's "more lucrative income" came from out-of-state assignments; he sometimes worked six days per week, did not have vacation time, but did have a seasonal lay-off period during the winter months.  The dissolution court did not find credible Chad's assertion that he no longer intended to seek out-of-state employment because of his desire to spend more time with his daughter.  The court noted Chad had not "made much of an effort to return home to see his wife and daughter even when he is only 90 miles away."

The dissolution court determined Chad's annual income to be $90,870—using a three-year average from 2007, 2008, and 2009.  For her part, Jennifer worked as a teacher for the Dubuque school system and earned $41,000 at the time of the dissolution trial.  Based on these incomes, the dissolution court ordered Chad to pay $800 per month in child support.

Chad's employment remains the issue in this appeal. Before the divorce, Chad would wait to hear from the union if higher paying, out-of-state jobs were available, otherwise he was "on the bench" waiting for the next assignment. After the divorce, Chad took a position with Dubuque's Fondell Excavating, where he worked on local sewer projects for eighteen months, hoping the position would become permanent. But in August 2012, Fondell told Chad that he would be laid off soon because work was slow. Chad contacted his business agent through the union, but learned no in-state work was available. So, from August to November 2012, Chad worked in North Dakota doing pipeline work. During those four months, Chad was able to exercise visitation with his daughter only twice.

In February 2013, Chad took a job with Mid-American Energy as an apprentice welder. In that position, he started working regular hours of 7:00 a.m. to 4:00 p.m. and earned $23.55 per hour at the time of the modification hearing. Those wages amounted to an annual income of $50,359. During this time, Chad continued to make his child support payments of $800 per month.[1]

On May 2, 2013, Chad filed a petition for modification alleging "a significant, substantial, and material change in circumstances since entry" of the decree. Specifically, the petition alleged Chad "obtained new employment resulting in a decrease in his annual income and a more regular and traditional work schedule with no lay-off periods in January, February, and March and a lower wage."

---

[1] By the time of the modification hearing, Jennifer's salary with the school district had increased to $49,300 annually.

The parties appeared before the district court for a modification hearing on October 16, 2013. Jennifer resisted the modification, arguing Chad intentionally reduced his income and, therefore, was not entitled to a reduction in his child support obligation. After hearing the parties' evidence, the district court found a substantial change in circumstances warranted a modification of the child support provisions of the decree and reached the following determination about Chad's employment:

> When he was laid off from Fondell through no fault of his own, he elected to take employment which would not require him to travel as he had been required to do when working with Local 234. Although his current employment with MidAmerican Energy resulted in a decrease in income, there has been no showing this decrease was through improper intent or reckless conduct.

Rather, the court decided Chad's reduction in income was "due to a legitimate desire to have steady employment with consistent hours." The court modified Chad's child support payments to a sum of $440 per month.

In the modification order, the court also stated: "The parties now agree that petitioner shall exercise visitation every other weekend from Friday until Tuesday morning." This change incorporated the midweek visitation day into an extended weekend so the parties could make less trips between their residences, which were about thirty-five miles apart.

Chad filed a motion to enlarge under Iowa Rule of Civil Procedure 1.904(2), contending the court's order on visitation should not have eliminated the midweek visitation day in the weeks when he did not have weekend visitation with A.F. Under the court's order, Chad would go ten days without seeking his daughter.

Jennifer likewise filed a rule 1.904(2) motion. She favored the change in visitation to eliminate the midweek visitation day, even in the weeks when Chad did not have weekend visitation.

In response to the parties' motions, the court filed an order on January 10, 2014, concluding it had "incorrectly stated the visitation utilized by the parties prior to the court's hearing on October 16, 2013." The court amended its order to restore visitation for one evening of every week following Chad's non-visitation weekends. Jennifer now appeals the child support and visitation issues.

## II. Principles of Modification and Standard of Review

A district court has authority to modify a child support order under Iowa Code section 598.21C (2013) if the parent seeking modification is able to show "a substantial change in circumstances" which includes "changes in the employment, earning capacity, income or resources of a party." Iowa Code § 598.21C(1). Additional criteria for modification exists when the court ordered child support varies by ten percent or more from the amount which would be due under the child support guidelines. Iowa Code § 598.21C(2).

We review de novo orders addressing applications to modify child support. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983). Within that de novo review, we recognize the district court has "reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *Id.* We give weight to the district court's findings of fact, especially when they involve discerning the

credibility of witnesses. *In re Marriage of Van Doren*, 474 N.W.2d 583, 586 (Iowa Ct. App. 1991).

A parent seeking to modify the visitation provisions of a dissolution decree must show a material change in circumstances since the decree and that the requested change in visitation is in the child's best interest. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). This burden is less demanding than if a parent is seeking to change a custodial provision. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Salmon*, 519 N.W.2d at 96 (citing Iowa Code § 598.41(1)).

## III. Analysis of Jennifer's Claims

This appeal requires us to address three issues: the modification of child support, the modification of visitation, and attorney fees. We will do so sequentially.

### A. Modification of Child Support

Jennifer argues the district court erred by not imputing to Chad an income consistent with his "true earning capacity." She contends Chad voluntarily abandoned his former career "and the associated remuneration" and, therefore, the court's reduction of his child support obligation failed to do equity. Chad responds that he did not voluntarily quit his job at Fondell and the only work he could find in the fall of 2012 was in North Dakota, where he was separated from

his daughter. He urges us to affirm the district court's decision to figure the child support obligation based on his actual income at MidAmerican.

On appeal, the parties fight over the applicable case law. Jennifer asserts there are "no reported cases permitting a reduction when the obligor abandons a skilled occupation to assume a lower paying position, absent a compelling reason such as is absent from the record in this matter." Chad cites several cases where our court has held an obligor's decision to take a lower-paying job was justified by the distance or other sacrifices required to maintain the salary level used to calculate the original child support amount. *See, e.g., In re Marriage of Blum*, 526 N.W.2d 164, 166 (Iowa Ct. App. 1994); *In re Marriage of Fidone*, 462 N.W.2d 710, 712 (Iowa Ct. App. 1990).

When asked to modify child support and faced with the decision whether to use a parent's earning capacity rather than actual income, a court must consider if the parent's inability to earn a greater income is voluntary. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006). If the reduction in income is a "self-inflicted" wound, it does not constitute grounds for modification. *See Blum*, 526 N.W.2d at 165.

Like the district court, we do not believe Chad intended to deprive his daughter of child support or acted with reckless disregard for her well-being when—after facing a lay off from his excavation job and working far from home for several months—he secured steady employment with benefits and regular working hours. *See In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993) (declining to "penalize" parent even when he lost his job due to insubordination

when he diligently sought new employment). Chad testified he decided to apply for the MidAmerican position because "it was a steady, year-round job" with vacations, dependent care, a set hourly schedule, and the eventual possibility of a promotion. It did not require him to travel outside of Iowa, so he could be available for midweek evening and weekend visitations with his daughter. Chad had valid reasons for wanting to stay in Iowa; his disinclination to wait in line for better-paying, but temporary and unpredictable out-of-state heavy equipment jobs did not constitute a self-inflicted or voluntary reduction in salary. *See Blum*, 526 N.W.2d at 166. We affirm the district court's modification of child support.

### B. Modification of Visitation

Jennifer also argues the district court erred in modifying the decree as it relates to visitation. She alleges the court grounded its decision on a "mistaken assumption" the parties intended to preserve Chad's midweek visitation evening during the work weeks following his non-visitation weekends.

Before the modification trial, the parties informally changed Chad's weekend visitations to include an extra day to cut down on multiple trips between their two homes. But Chad points out on appeal, "[i]t is uncontested that on those weeks that Chad did not have weekend visitation, he had one mid-week overnight visitation every Tuesday to Wednesday."

We affirm the district court's restoration of the midweek evening visit between Chad and A.F. following the weekends that she does not spend in his care. We defer to the district court's factual determination regarding the parties'

practice on this point, and also believe allowing maximum continuing contact with both parents is in A.F.'s best interest.  *See* Iowa Code § 598.41(1).

### C.  Attorney Fees

Jennifer contends the district court erred in refusing to award her trial attorney fees.  She asserts Chad has an earning capacity nearly double her own.

Trial courts have considerable discretion in awarding attorney fees in a modification action.  *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).  One consideration is the respective abilities of the parties to pay.  *Id.*  Jennifer must show the district court abused its discretion.  *See id.*  Because the district court did not impute a higher income to Chad, Jennifer's argument concerning their earning capacities is not convincing.  We find no abuse of discretion in declining to award trial attorney fees.

Both parties ask for appellate attorney fees.  An award of appellate attorney fees is likewise discretionary and acknowledges the parties' financial positions.  *In re Marriage of Gaer*, 476 N.W.2d 324, 330 (Iowa 1991).  Because both parties advanced viable arguments on appeal and both are earning roughly the same annual income, we believe they should pay their own appellate attorney fees.  Costs are divided equally between the parties.

**AFFIRMED.**