# IN THE COURT OF APPEALS OF IOWA

No. 20-1115
Filed May 12, 2021

**BRIAN McKNIGHT,**
     Plaintiff-Appellee,

**vs.**

**KAYLA ANDERSON,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.


Kayla Anderson appeals the custody and child support provisions of a

modification decree. **AFFIRMED.**


Kelsey Bauerly Langel of Bauerly & Langel, P.L.C., Le Mars, for appellant.

Sharese Whitesell of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C.,

Dakota Dunes, South Dakota, for appellee.


Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Kayla Anderson appeals the custody and child support provisions of a modification decree. Brian McKnight contends the district court modification was correct.

I.      **Background Facts and Proceedings**

Kayla and Brian engaged in a relationship that resulted in the birth of one child in 2016. The parties have never been married. In 2016, the parties were involved in proceedings to establish paternity, custody, visitation, and child support. The court entered an order approving the parties' stipulation providing for joint legal custody, shared physical care, a parenting schedule, and child support, but the parties often deviated from the parenting time provision and schedule. Over the years, the parties disagreed about schedule changes but were generally successful in maintaining a relationship directed at the best interests of the child. The parties returned to court in 2019 as the child neared school age.

At the time of the 2016 stipulation, Brian lived in Sioux City and Kayla in Onawa. At the time of the modification, Kayla lived in Le Mars.[1] Kayla was engaged to a man who owned a business and lived with him, their two children, and children of both Kayla and her fiancé from prior relationships.[2] Kayla sought to enroll the child in a preschool in Le Mars, and indicated she would transport the child when required to maintain the parenting time schedule. Brian resisted enrollment because his parenting time would be diminished. He asked that the

---

[1] Kayla relocated multiple times between 2016 and 2019. All of those were related to her choice to live with her fiancé.
[2] The modification decree states that Kayla and her fiancé intended to marry in August 2020. We are not aware whether that occurred.

child be enrolled in preschool in Sioux City. The dispute led Kayla to file for modification of custody and child support in 2019. Brian raised counterclaims to both issues.

Trial was held in July 2020. The district court heard testimony from both parents and received affidavits from certain family and community members. Kayla was a stay-at-home parent but had previously worked as a CNA and teacher's aide. Brian had been employed by the same company for more than seven years. His work schedule required him to arrive as early as 4:30 a.m. and work until 3:00 p.m. Brian maintained consistent childcare and also had the help of his mother and brother, who also live in Sioux City.

Kayla's relationship with her fiancé has a history of "difficulty." The child witnessed the fiancé engage in physical violence toward Kayla, resulting in her seeking a domestic abuse protection order. Kayla and her fiancé have engaged in counseling and they "appear to have resolved their issues or learned new coping skills with the issues that contributed to the past physical abuse." The fiancé has a history of becoming frustrated when Brian attends the child's medical appointments with Kayla. The court stated the following regarding the unrest in Kayla's relationship: "the presence of these issues causes the Court some pause when considering the issue of custody. The concerns the Court has with Kayla do not exist with Brian."

The court made the following finding related to the distance between the parties' residences:

> The Court notes that their joint physical care parenting schedule and arrangement appears to have been going well and could have continued had it not been for the distance between them created by

Kayla's move to Le Mars. Presently they live in two school districts and live about 26 miles apart. This distance makes joint physical care impractical, if not unworkable.

The court found the following, specifically related to the schooling issue:

Brian cannot get [the child] to Le Mars before work and it does not appear that Kayla could get [the child] to Brian for school in Sioux City. This situation causes the prospect of joint physical care continuing to be a nonstarter. Joint physical care can no longer work.

Ultimately, the court found a substantial change of circumstances had occurred to warrant modification of the 2016 decree. A balance of the above considerations resulted in the court awarding physical care of the child to Brian.

Following the physical care modification, the district court also considered child support. The district court imputed income to Kayla because she was "capable of working and earning a wage if it were not for the cost of child care she would incur should she return to work." The court noted that employment as a CNA would require Kayla to re-certify, but stated that would not be difficult, and imputed an income at the rate "equa[l] to part-time work as a CNA or as a daycare worker." The court utilized the child support guidelines and ordered Kayla to pay $83.00 per month to Brian in child support. Kayla appeals the physical-care and child-support determinations.

## II.     Standard of Review

We review applications for modification of child custody and support de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.* (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013)).

### III.    Analysis

#### A.    Custody

Kayla raises two arguments related to custody of the child.  She argues that the district court erred in finding Brian proved an ability to more effectively minister to the child's well-being and in finding that modification was in the best interests of the child.  Custody issues arising after a paternity determination are examined by application of the statutory factors listed in Chapter 598, even though paternity determinations are made pursuant to Chapter 600B.  Iowa Code § 600B.40(2) (2019).  "To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change."  *In re Marriage of Frederici*, 338 N.W.2d 156,158 (Iowa 1983).  By their pleadings, the parties agreed the prior decree should be modified because of substantial changes in circumstances, but Kayla appeals the district court's decree that awarded Brian physical custody of the child, "which is the right and responsibility to maintain the principal home and to provide routine care for the child[ ]."  *Id.*

Our primary consideration in custody issues is the best interests of the child.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  "The best-interests standard 'provides the flexibility necessary to consider unique custody issues on a case-by-case basis.'"  *Id.* (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007)).  When courts examine a custodian's relocation with a child, courts "must consider all of the surrounding circumstances.  They include the reason for removal, location, distance, comparative advantages and disadvantages of the

new environment, impact on the children, and impact on the joint custodial and access rights of the other parent." *Frederici*, 338 N.W.2d at 160. In this case, the child's relocation with Kayla is not the precise question. However, the factors listed will help us determine whether the change in physical care was in the best interest of the child.

Kayla argues the district court erred in finding Brian proved his "ability to minister more effectively to the child[ ]'s well being." *See id.*at 158. Courts consider the factors presented in Iowa Code section 598.41(3) (2019). Iowa Code § 600B.40; *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996). In addition to the statutory factors, courts also consider the factors presented in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The court's "objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity." *Courtade*, 560 N.W.2d 38.

We agree with the district court that both parties love the child. Some of the factors we consider are a wash, because both parents have a history of providing suitable care for the child in the past and are dedicated to meeting the child's needs. Accordingly, we will discuss only the factors that tip the scale.

The history of unrest in Kayla's home, including multiple relocations based on the status of Kayla's relationship and the history of domestic violence, is problematic. *See* Iowa Code § 598.41(3)(j); *Winter*, 223 N.W.2d at 166. Kayla relocated multiple times to maintain her relationship. Our review of the record does not reveal any motive to prevent contact between the child and Brian. Kayla's desire to maintain a consolidated household with her fiancé and relieve financial

constraints of maintaining two households may be appropriate. *See Hoffman*, 867 N.W.2d at 33. Although it appears that the violence between Kayla and her fiancé has been alleviated, the record shows that the exposure to violence disrupted the child's progress with potty training and sleeping through the night. The child sought comfort from Brian and his family during that time, and Brian's family provided the child with coping skills to ease his fear.

Kayla has an extensive history of resisting Brian's ability to parent the child. Also, Kayla's fiancé is easily frustrated when Brian exercises his parental right to be involved in things like the child's medical care, creating unrest between the parents and straining communication. *See* Iowa Code § 598.41(3)(c), (e). No matter which party maintains the child's primary home, the other party's parenting schedule will change. The parties have exhibited the ability to accommodate each other's holiday schedules in the past. However, Kayla has restricted Brian's parenting time based on frustrations related to custody negotiations, while Brian has been more open and accommodating to adjustments so the child may have meaningful time with both parents. *See id.*; *Winter*, 223 N.W.2d at 166. The child would have more contact with siblings in Kayla's home, but would have more consistency and stability in Brian's home. Kayla is a stay-at-home parent and would provide the child's care full-time in her home. But, Brian has maintained a consistent routine with a babysitter and has access to familial care providers for additional help.

It is clear on our review of the record that both parents want to provide a home and care for the child. But, because the child will attend school and the parents reside in two separate districts, along with the transportation issues, it

would be helpful for the child to reside primarily in one home to effectively facilitate school attendance. Brian has maintained a consistent home environment, employment, and child-care routine. Brian has attempted to facilitate contact between the child and Kayla's other children during his parenting time and desires to foster those relationships. On our de novo review of the record, we agree with the district court that Brian proved by preponderance of the evidence that he has a greater ability to minister to the child's well-being.

B.    Child Support

Kayla argues that the district court erred in imputing income to her in recalculating the child support award. She specifically targets the district court's alleged failure to consider (1) that she provided health insurance for the child, (2) child-care costs would result if she worked twenty hours per week, and (3) that the parties stipulated that neither party would pay child support.

Child support orders made pursuant to section 600B.25(1) are made in consideration of the child support guidelines presented in section 598.21B. Iowa Code § 600B.25(1). The district "court has continuing jurisdiction over proceedings brought to compel support and to increase or decrease the amount thereof. . . ." *Id.* § 600B.31. A petitioner who desires to change a child support award must prove "by a preponderance of the evidence that subsequent conditions have so changed that the welfare of the children requires, or at least makes expedient, such modification." *In re Marriage of Robbins*, 510 N.W.2d 844, 845 (Iowa 1994). Courts consider the following:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that

continued enforcement of the original decree would, as a result of the changed conditions, result in a positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*Id.* (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)). We examine "each parent's earning capacity, economic circumstances, and cost of living." *Id.* Statutory provisions also apply. *See* Iowa Code §§ 600B.25, 598.21C. The Iowa Code lists a number of factors courts consider to determine whether there has been a substantial change in circumstances and indicates that it does exist "when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established pursuant to section 598.21B." *Id.* § 598.21C(1), (2).

In this case, the physical care of the child changed from a joint plan to physical care with Brian. Brian will now bear a larger financial burden for the day-to-day costs of the child including food, clothing, and child care, among other things. We agree with the district court that there has been a substantial change in circumstances to warrant modification of the child support award. The record does not support Kayla's argument the district court failed to consider that she has historically provided the child's medical insurance. The district court discussed that history and specifically ordered that Brian "explore Hawk-I and other alternatives for [medical] coverage and pay the cost of the coverage."

A "child support award may be based upon [a] party's earning capacity, as opposed to his or her actual earnings." *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996).

When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines. Before using earning capacity rather than actual earnings a court must, however, make a determination that, if actual earnings were used, substantial justice would occur or adjustments would be necessary to provide for the needs of the children and to do justice between the parties. We examine the employment history, present earnings, and reasons for failing to work a regular work week when assessing whether to use the earning capacity of a parent.

*In re Marriage of Malloy*, 687 N.W.2d 10, 115 (Iowa Ct. App. 2004) (citations omitted); *see* Iowa Ct. R. 9.11.

The court imputed income to Kayla "to do justice between the parties and be equitable." *See* Iowa Ct. R. 9.11. The court engaged in a discussion of Kayla's work history and income from child support for another child. The district court noted that Kayla's CNA certification has lapsed, but that it would not be difficult to recertify. It also discussed the fact that Kayla stays home to avoid child-care costs, and specifically found "that it is reasonable for Kayla to remain at home and not work until the time her children are in school." The child-support guidelines worksheet reveals that the district court did not list child care expenses Kayla would incur for the three other children. The worksheet specifically states that the childcare costs listed apply to the present action only. Thus, because Kayla is not the custodial parent of this child, the costs she would incur for the three other children, who are not Brian's children, are inapplicable.

Finally, Kayla argues the court should have enforced the 2016 stipulation in that the parties agreed neither would pay child support. When the parties stipulated that neither would pay child support they also stipulated to shared physical care. But as a result of the modification of custody, they no longer share

care.  There is "a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded."  Iowa Code § 598.21B(c); Iowa Ct. R. 9.4; *see also* Iowa Code § 600B.25(1) (directing support determinations for unmarried parents to section 598.21B).  We agree with the district court that the amount of support determined by the guidelines is required to provide reasonable support to the child.  *See* Iowa Ct. R. 9.3(1).

## IV.    Conclusion

Because Brian met his burden to prove that modification was in the child's best interests and that he was best suited to care for the child's well-being, we affirm the district court's modification of physical care.  Kayla's child support arguments are not supported by the record.

**AFFIRMED.**