# IN THE COURT OF APPEALS OF IOWA

No. 22-1538
Filed October 11, 2023

IN RE THE MARRIAGE OF JOSEPH McCAFFRY
AND TRACEY McCAFFRY

Upon the Petition of
JOSEPH McCAFFRY,
    Petitioner-Appellee,

And Concerning
TRACEY McCAFFRY,
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Patrick McElyea,

Judge.


        Tracey McCaffry appeals a district court ruling encompassing modification

of a dissolution decree and contempt.  **AFFIRMED AS MODIFIED.**


        Lynne C. Jasper, Bettendorf, for appellant.

        Robert S. Gallagher of Gallagher, Millage & Gallagher, P.L.C., Bettendorf,

for appellee.


        Considered by Chicchelly, P.J., Buller, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**MULLINS, Senior Judge.**

Tracey McCaffry appeals a district court ruling on Joseph McCaffry's petition to modify the parties' dissolution decree and her contempt application. As to modification, Tracey argues the court erred in modifying Joseph's spousal support obligation. As to contempt, she asserts the court erred in not finding Joseph in contempt for nonpayment of child and spousal support. She also claims the court erred in admitting expert testimony and medical records at trial. Tracey requests an award of appellate attorney fees.

## I.  Background

We previously highlighted the following pertinent facts on appeal from the parties' dissolution decree:

> At the time of trial [in May 2019], Joseph was forty-six and Tracey was forty-nine. The parties have two children, aged fifteen and sixteen at the time of trial. Joseph has another adult child from a previous relationship. The court determined Joseph's gross annual income to be $129,000.00 and his annual disability benefits to be $20,000.00. The court determined Tracey's annual income to be $23,000.00 and concluded she received in the neighborhood of $16,000.00 in disability benefits in relation to one of the parties' children. The parties were awarded joint physical care of their children, and Joseph was ordered to pay $618.95 in monthly child support when both children were eligible and $434.79 when only one child remained eligible. The court ordered Joseph to pay monthly spousal support to Tracey in the amount of $1000.00 when both children were eligible for child support and $1200.00 when only one child remained eligible, until the first of Tracey's remarriage, either parties' death, or Joseph reaching the age of sixty five.

*In re Marriage of McCaffry*, No. 19-1445, 2020 WL 4201005, at *1 (Iowa Ct. App. July 22, 2020). In that appeal, we rejected Joseph's claim that the spousal support award in favor of Tracey was inequitable and, as to his claim that his spousal support obligation should cease upon his mandatory retirement at the age of fifty-

seven, we observed that question should be raised in a modification proceeding "when retirement is imminent or has actually occurred." *Id.* (quoting *In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015)).

In May 2021, Joseph filed a petition for modification, in which he alleged he suffered a heart attack in late 2020 and the resulting state of his health rendered him ineligible to continue his employment as a United States Marshal, thus recently leading to his early disability retirement. Joseph also alleged his "income will decrease significantly considering that the disability retirement will be calculated as only a portion of the annual salary [he] has previously earned." He also pointed out Tracey would receive a portion of his retirement benefits. As a result, Joseph requested that the decree be modified to terminate his obligations to pay spousal support and provide life insurance. He also requested child support be modified based on the current circumstances.

In September, Tracey filed an application for rule to show cause, alleging Joseph had not paid child or spousal support since June, and asking that he be punished for the same. Following an unreported hearing later that month, the court entered an order noting Joseph had not received any income since his retirement in May because "the federal government is behind on his disability payments" and "he will be paid in a lump sum within approximately 30 days," at which point Tracey would also be provided payment. On this basis, the court continued the contempt matter. Following another unreported hearing in November, the court entered another order stating Joseph was still not receiving his disability benefits, and again continuing the contempt matter.

Ultimately, a trial on both modification and contempt was held in July 2022. Two days before trial, Joseph filed his witness and exhibit lists. In response, Tracey filed a motion to exclude testimony and evidence from one of Joseph's witnesses—nurse practitioner Alisa Paisley—alleging untimely disclosure. At the hearing, Tracey's counsel complained "a whole pile of medical records . . . was submitted to us at about 5 o'clock the day before yesterday," this evidence was never disclosed before then, and "we are confronted with somebody coming from some organization to testify about these medical records we believe for the purposes of establishing that [Joseph] is not only not capable of being a U.S. Marshal, but incapable of further work." Counsel also asserted Paisley "is not the appropriate person to comment on these medical records" because it's "hearsay, violation of best evidence, no adequate foundation." So counsel requested the evidence be excluded.

The court summarized prior, off-the-record discussions to amount to an agreement that Joseph was no longer eligible to be a U.S. Marshal "[a]nd that the true dispute in this case is going to be what are his employment income possibilities going forward," a characterization with which Tracey's counsel agreed. Joseph's counsel pointed out Paisley is Joseph's primary care provider and evidence from her would be limited to his medical ineligibility to serve as a U.S. Marshal.

The court ruled as follows:

> The objection is going to be overruled. The Court's going to hear testimony from Ms. Paisley regarding the medical records and foundation. The Court does not find that it's overly prejudicial considering there's some semblance of a stipulation regarding Mr.

McCaffry's health history, and that these are not being offered to show future disability, they're being offered to show what happened to create the disability with the U.S. Marshals.

During Paisley's ensuing testimony, Joseph sought to admit nine pages worth of medical documents concerning Paisley's treatment of Joseph. Tracey's counsel again objected based on untimely disclosure, asserting that "[f]or her to go ahead and testify about those items is a severe disservice to my client." Relying on its prior ruling, the court overruled the objection. Joseph also sought to admit a larger swath of medical records concerning treatment from a cardiologist following Joseph's heart attack, which Paisley testified she relied on in treating Joseph. The court overruled Tracey's objection to the admission of those documents as well. Paisley's substantive testimony was brief and only concerned the fact that Joseph was disqualified from employment with the marshal service due to his heart attack.

The remainder of the evidence shows the following. There is not meaningful dispute that Joseph's August 2020 heart attack and ongoing issues thereafter while he was on light duty resulted in his mandatory disability retirement, which took effect in May 2021. Aside from his health issues resulting from the heart attack, Joseph was otherwise an exemplary employee, as testified to by two of his supervisors. Joseph testified he has not been able to work since his retirement due to his heart issues. He agreed he hasn't seriously pursued other employment, but he testified he is focusing on improving his health. Aside from heart issues, he also suffers from arthritis, tinnitus, and PTSD from his service in the military for roughly two decades, and he testified those conditions also limit his job prospects.

All that said, none of Joseph's doctors have advised against him pursuing other employment.

While Joseph is not working, he continues to receive income from other sources. He receives service-connected disability compensation from the Department of Veterans Affairs in the amount of $1772.35 per month.[1] As a member of the Eastern Band of Cherokee Indians, Joseph also receives his per-capita share of casino revenues in a gross amount that shakes out to $1473.33 per month.[2] By the time of trial, Joseph was also receiving annuity payments from the United States Office of Personnel Management (OPM) in what we will call an adjusted gross amount of $2198.30.[3] So, by our calculations, Joseph, despite not

---

[1] Since the evidence shows there are no deductions from this income, this figure reflects both the gross and net amount. We specifically note this figure amounts to $21,268.20 per year, and the decretal court originally found Joseph received roughly $20,000.00 from this source at the time of the dissolution trial.

[2] These payments are made *twice* per year, not quarterly. There was conflicting evidence about this that was never really sorted out by the parties at the modification trial, but the weight of the evidence supports a conclusion that the disbursements are made twice per year. And, luckily, our record includes the exhibits from the original dissolution trial, one of which is a letter from the tribe explaining the per capita distributions are made twice per year, one in June and one in December. While the payments can vary, the evidence before us shows the semi-annual payments at this point are in the gross amount of $8840.00 with a federal tax deduction of $1326.00, resulting in two net payments of $7514.00 per year, which would shake out to $1252.33 per month. Here, we also note the court at the time of dissolution included Joseph's tribal income in its original calculation of Joseph's income at the time of the dissolution trial.

[3] Beginning on July 1, 2022, the unadjusted gross amount was to be $3752.00. However, the evidence shows 41.41% of that gross amount, $1553.70, is paid directly to Theresa by the OPM, resulting in an adjusted gross to Joseph of $2198.30.

Prior to July 1, 2022, the unadjusted gross was $5629.00 and, after factoring out Tracey's 41.41% payment of $2330.96, the adjusted gross to Joseph was $3298.04. Further deductions for insurance and taxes resulted in net monthly payment to Joseph of $1447.18. The record does not disclose exactly what the additional deductions would be to arrive at a precise net income to Joseph for the annuity payments after July 1, 2022.

being employed, has a gross monthly income of $5443.98, which translates to gross annual income of $65,327.76.[4]  On the other hand, Tracey's employment income hasn't changed much since the decree.  Her 2021 income taxes show employment income of $19,764.00 from her part-time employment at a restaurant.  On appeal, Tracey also acknowledges she receives $1553.70 per month from Joseph's OPM annuity, which results in additional income of $18,644.40, for a total annual income of $38,408.40.

As to Tracey's complaints about Joseph's non-payment of child and spousal support, Joseph agreed he fell behind in payments following his retirement, but he testified he had other financial obligations as well and "paid what [he] could."  The record is also undisputed that Joseph was not receiving any of his retirement benefits from the OPM, and he also explained he was of the understanding that the OPM would be setting aside these monthly obligations from his annuity benefits and, if he paid outside of that, then he would be paying double.  As will be discussed more later, counsel for the parties essentially agreed with the court that these obligations would be withheld from Joseph's benefits.

In its ruling, the court agreed Joseph "has not made significant efforts to obtain employment" since his retirement and "[t]here was no evidence presented that [he] is unable to find employment regardless of his health condition."  The court declined to modify child support given the unique circumstances in this case,

---

[4] In their briefs, it does not appear either party accurately calculates Joseph's actual gross income.  For her part, Tracey used the net figure when factoring in Joseph's tribal income, and she also incorrectly factored in four payments per year instead of two.  And she did not factor out the portion of the annuity payment that goes to her.  For his part, Joseph does not actually provide an all-encompassing figure, but we note he highlights the pre-July 2022 figures for the annuity payment.

namely the child still being in high school and remaining under nineteen years of age, his significant needs, and the uncertainty about his disability income now that he has reached the age of majority. Based on those circumstances, the court found it more appropriate to address support when the issue of dependent adult support was ripe, as contemplated by the original decree.

As to spousal support, the court found the reduction of Joseph's gross income from $149,000.00 per year or $12,416.67 per month to roughly half of that at the time of trial was a substantial change in circumstances warranting modification. The court also looked at Tracey's better financial position that resulted from Joseph's early retirement, which included her receiving early pension benefits in excess of what she was originally awarded for spousal support, which would continue for life as opposed to a time certain under the decree. So the court modified Joseph's obligation to just $1.00 per month, which would allow Tracey to pursue modification "in the event the pension payments are not as anticipated by this court or the parties."

As to Tracey's allegations of contempt, the court found the alleged violations were not willful because they were due in part to miscommunication with the federal government about Joseph's pension. The court also observed Tracey would be receiving a lump sum payment from the government that would bring any outstanding payments current. So the court denied her contempt application.

Tracey appeals.

## II. Discussion

### A. Evidentiary Rulings

We begin with Tracey's complaints about the court's evidentiary rulings, which we review for an abuse of discretion. *In re Marriage of Lockard*, No. 17-0732, 2018 WL 1433779, at *4 (Iowa Ct. App. Mar. 21, 2018). In conducting this review, we are mindful "that evidence in an equity proceeding should generally be received subject to objections." *Lynch v. Moreno*, No. 21-0815, 2022 WL 1486185, at *4 (Iowa Ct. App. May. 11, 2022).

Tracey complains the court improperly admitted expert testimony from the nurse practitioner and related medical documents despite untimely disclosure of the same under Iowa Rule of Civil Procedure 1.500. But the parties essentially stipulated Joseph was no longer qualified to work for the marshal service, and the court ruled the challenged evidence would be allowed only on that issue, which was already resolved. As a result, the court found Tracey would not be prejudiced by the admission. On our review, we summarily agree and conclude Tracey is not entitled to any relief on this claim. *See State v. Myers*, 382 N.W.2d 91, 93 (Iowa 1986) ("When a trial court has exercised its discretion to admit expert testimony, we will reverse only if we find an abuse of that discretion and prejudice."); *see also McGrew v. Otoadese*, 969 N.W.2d 311, 325 (Iowa 2022) (applying harmless-error analysis to expert-disclosure requirements under rule 1.500(2)).

### B. Modification

Next, Tracey argues the court erred in modifying spousal support. An action to modify a decree of dissolution of marriage is an equitable proceeding, which we

review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

The district court may modify spousal support when there has been a "substantial change in circumstances." Iowa Code § 598.21C(1) (2021); *In re Marriage of Reitz*, 585 N.W.2d 226, 229 (Iowa 1998). The party seeking modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). The following principles apply to modifications under section 598.21C:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998) (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)); *accord Michael*, 839 N.W.2d at 636. "In determining whether there is a substantial change in circumstances, the court shall consider," among other things, "[c]hanges in the employment, earning capacity, income, or resources of a party." Iowa Code § 598.21C(1)(a).

First, Tracey complains the court contradicted itself by modifying spousal support but not child support. But the court's decision to modify either is discretionary, *see id.* § 598.21C(1), and here the court exercised that discretion to

not modify child support, as Tracey requested, based on the unique circumstances of the child being supported. We disagree with the implication that because the court denied modification as to child support, it was also required to deny modification of spousal support.

Moving on, Tracey argues the "court erred in determining the incomes of the parties when deciding a modification of spousal support payments." She submits the court should have set Joseph's income at $77,703.80. But the court's assessment of Joseph's income was a gross amount of $6374.35 per month, which equates to gross annual income of $76,492.20. This is basically a distinction without a difference, especially in light of our conclusion that both calculations are flawed according to our calculation of Joseph's gross annual income of $65,327.76. The court's excessive calculation could only serve to benefit Tracey, so she has suffered no inequity on this point and is not entitled to relief. *See In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

Next, Tracey argues "there was no evidence that Joseph is not capable of work." The district court agreed, and so do we. Because of this, Tracey argues there is no basis for modification. But changes in employment and income, which we have here, still trigger the court's discretion to modify spousal support. *See* Iowa Code § 598.21C(1)(a). At the time of dissolution, Joseph was gainfully employed and bringing in $149,000.00 per year, while at modification he was unemployed with income of less than half of that. The thrust of Tracey's argument is that Joseph will obtain employment in the future so his decreased income now is only temporary and does not amount to a permanent change in circumstances sufficient to warrant modification. But the district court specifically acknowledged

this and still saw fit to modify spousal support. This is likely because Joseph is no longer qualified for employment in the fields he has been in for the last three decades, military and law enforcement. And while there was some evidence that he could obtain employment in security or lawn care, it is safe to assume such employment would not increase Joseph's earning capacity to anything near what he was earning before his retirement. So Joseph did prove a permanent change in circumstances. To conclude otherwise would require us to assume Joseph could go out and find employment outside the fields he has worked in for thirty years that would pay him $85,000.000 per year. And while we agree with Tracey that "getting older was anticipated by the trial court" and therefore could not be the sole basis for modification, we also observe that Joseph's heart attack resulting in his premature retirement were not contemplated. Tracey also argues that because Joseph's ultimate retirement was contemplated and we previously held his presumed retirement did not render the original award inequitable, "it should not stop now either." But that's not what we said; rather, we found the effect retirement had on spousal support could be revisited in a modification proceeding once it was imminent or already occurred, which is exactly what's happening now. *See McCaffry*, 2020 WL 4201005, at *1. All-in-all, while we agree with Tracey that Joseph's current income is not permanent, we find that a permanent and substantial decrease in his income has occurred since the decree. So we agree with the district court that a downward modification was appropriate.

All that said, there is merit in Tracey's claim that her award of spousal support should not have been essentially wiped away in its entirety, save the $1.00 per month that would allow her to pursue another modification later. On our de

novo review and in consideration of the parties current circumstances and the factors contained in section 598.21A(1), namely Tracey's need and Joseph's ability to pay, *see Gust*, 858 N.W.2d at 411, we determine Joseph's obligation should have only been reduced to $500.00 per month. In reaching this determination, we have considered the district court's conclusion that Tracey is in a better financial position at present due to Joseph's early retirement, but we also observe her position will be worse later on than it would have been had Joseph retired at age fifty-seven.

So we affirm the district court's decision to modify spousal support, but we modify the award to $500.00 per month, which shall continue until the first of either party's death, Tracey's remarriage, or Tracey's eligibility to receive a portion of Joseph's social security benefits.

### C.    Contempt

We also review the denial of a contempt application alleging willful disobedience of a dissolution decree for an abuse of discretion. *See Terry v. Iowa Dist. Ct.*, No. 17-0959, 2018 WL 3471836, at *2 (Iowa Ct. App. July 18, 2018). "[W]e will affirm the judgment of the district court unless it is demonstrated the district court grossly abused its discretion in denying the application." *Id.* On this issue, we are mindful that "the district court has broad discretion to withhold punishment," and "appellate courts should interfere only where that discretion 'has been clearly abused.'" *Wendt v. Peterson*, No. 20-1018, 2021 WL 1400816, at *2 (Iowa Ct. App. Apr. 14, 2021) (quoting *Newby v. Iowa Dist. Ct.*, 147 N.W.2d 886, 894 (Iowa 1967)).

Tracey argues "Joseph had the means to pay child and spousal support payments ordered in the decree and willfully failed to do so." While Tracey details the instances of non-payment and argues the court erred in finding Joseph's violations were not willful, she does not argue how the court abused its discretion in withholding punishment. Aside from the fact that the court found Joseph's conduct was not willful, it implicitly decided to withhold punishment either way because these obligations would be current in the near future through a lump sum to Tracey from the federal government. While Tracey now says there is no indication in the record that this payment covers Joseph's back support, both parties led the district court to believe that it would. Specifically, Tracey's counsel agreed with Joseph's counsel that the payment would "purge Mr. McCaffrey of his arrearage." Later, when the court characterized the portion of the annuity going to Tracey as including her marital portion of the benefits plus Joseph's support obligations, Tracey's counsel agreed that characterization is "as close as we can get to accurate." At the conclusion of trial, the court also explained that, if Tracey would be receiving her support through a lump sum from the government, then Joseph's non-payment can hardly be willful. We agree. And we can discern no abuse of discretion in the district court's decision to withhold punishment if the facts were as the parties presented them to the court. While what the parties presented might not be what ends up happening, the decision made by the court based on the information it had was not unreasonable. So we affirm the denial of Tracey's contempt application.

**D.      Appellate Attorney Fees**

Tracey requests an award of appellate attorney fees in the amount of $7000.00.  She has not submitted an itemization to support her request.  *But see In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020).  In any event, an award of appellate attorney fees is not a matter of right but rests within the appellate court's discretion.  *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).  The court considers "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).

On our review, we determine each party shall pay their own attorney fees.  Costs on appeal are taxed equally between the parties.

**III.      Conclusion**

We reject Tracey's evidentiary challenge.  We affirm the district court's decision to modify spousal support, but we modify the award to $500.00 per month, which shall continue until the first of either party's death, Tracey's remarriage, or Tracey's eligibility to receive a portion of Joseph's social security benefits.  We affirm the denial of Tracey's contempt application, and we deny her request for appellate attorney fees.  Costs on appeal are taxed equally between the parties.

**AFFIRMED AS MODIFIED.**